**Bhagwati P. K. PODDAR, Plaintiff-Appellant,**

v.

**YOUNGSTOWN STATE UNIVERSITY et al., Defendants-Appellees.**

No. 73-1002.

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1973.

Decided June 14, 1973.

Eugene Green, Green, Schiavoni, Murphy & Haines, Youngstown, Ohio, for plaintiff-appellant.

John G. Ingram, Youngstown, Ohio, for defendants-appellees.

Before WEICK, Circuit Judge and CECIL and O'SULLIVAN, Senior Circuit Judges.

O'SULLIVAN, Senior Circuit Judge.

Bhagwati P. K. Poddar appeals from dismissal of his civil rights action, brought under 42 U.S.C. § 1983, alleging that defendants, Youngstown (Ohio) State University and its governing authorities, violated his constitutional rights in failing to continue his employment as a professor at the University. He had been notified that his employment would terminate at the end of the 1971–1972 school year. He charged that this action was taken because of his exercise of the free speech guaranteed him by the First Amendment to the Constitution of the United States.

This was the second action brought by appellant against these defendants. In a first action, he charged constitutional wrong in the school's decision not to continue his employment after the 1970–1971 school year. In that action, Chief Judge Frank J. Battisti of the United States District Court for the Northern District of Ohio, Eastern Division, ordered defendants to furnish appellant with a statement of their reasons for not renewing his contract. This was followed by a hearing before a hearing examiner who concluded that defendants had not violated any of appellant's constitutional rights in its nonrenewal of his contract. The examiner did, however, recommend that appellant be reinstated for another year because of the lateness of defendants' formal supplying appellant with the reasons why his contract was not being renewed. On November 9, 1971, the first case was dismissed by Judge Battisti on the basis of the hearing examiner's findings, and the agreement of the University to extend appellant's contract for the school year 1971–1972.

By letter dated November 13, 1971, defendant President of the University notified appellant that at the end of the 1972 school year, June 16, 1972, his employment would terminate. The letter stated that the "reasons for termination remain those previously supplied to you and found valid by the Court." It was

this letter that prompted the second action, which was heard by District Judge Leroy J. Contie, Jr. Judge Contie's denial of relief is the subject of the appeal before us.

Appellant had been hired by the defendant University in January, 1969, as an Assistant Professor in the Department of Sociology and Anthropology. Appellant's original employment was for a term of one year. During his first year, the head of appellant's department recommended him for a promotion to the position of Associate Professor. Such promotion was turned down by the University officials. The asserted reason for this was the school's practice of not considering a faculty member for promotion until he had been teaching for at least two years.. It was appellant's disappointment at not obtaining an early promotion and his consequent activities that brought about the termination of his employment.

The conduct and attitude of appellant changed drastically and his ability to work with his fellow professors became increasingly more difficult as a result of his displeasure at denial of the desired promotion. An attitude of suspicion added to the problem. He suggested that his color—he is a native of India—was part of the school's motivation. No proof supported this assumption. Appellant was very vocal about his dislike for the University's promotion policy, and he attempted to get support to have it changed. He also employed his classroom as a forum to air his views and feelings. He continually threatened the department head and others that he would take his case to one or more of such organizations as the Fair Employment Practices Commission, the American Sociological Association, and others. The total result of this conduct was the recommendation to the University not to renew appellant's contract. All of appellant's own senior professors concurred in this recommendation. The recommendation was taken under advisement and the appellant was notified in June, 1970, that his one-year contract would not be renewed for the 1971–1972 school year. We need not here review at length the evidence that was before the hearing examiner appointed by Judge Battisti and before Judge Contie at the plenary trial which he conducted.

At the first hearing the reasons furnished appellant were put in the record, as well as other testimony and evidence. As to the alleged conduct which appellant contends was the basis for defendants' decision not to renew his contract, the examiner said in part:

"It was the unfortunate by-product of his activities, and not the activities themselves, that undoubtedly resulted in his behavior change which did adversely affect his academic and professional performance."

His report also contained the following:

"I further find that there is no evidence that supports Paragraph 4 of Plaintiff's Complaint to the effect that Plaintiff's race, color or national origin had anything to do with the denial of his promotion."

\* \* \* \* \* \*

"They [appellant's seniors] tried to convince Plaintiff, without threat or intimidation on their part, to bide his time, and his promotion would come. Plaintiff apparently resented their lack of enthusiasm for his problem and concern and caused a speedy deterioration of his relationship with his co-workers, to the unfortunate detriment of the Department."

\* \* \* \* \* \*

"The exercise of First Amendment protection cannot completely supercede the need for orderly school administration and in this particular case, the need for maintaining harmony among fellow teachers within the same department. Plaintiff's attitude and behavior impeded the proper performance of his daily duties within the Department."

\* \* \* \* \* \*

"In summary the reasons given by the University are not arbitrary and capricious and are supported by suffi-

cient and credible factual basis and were not motivated by and based upon constitutionally improper reasons."

The second lawsuit came on to be heard on June 22, 1972, before U. S. District Judge Leroy J. Contie upon plaintiff-appellant's motion for a preliminary injunction to restrain defendants from terminating his employment. The cause was at issue and Judge Contie chose to hear it on the merits, as well as upon the application for preliminary injunction. This procedure was proper. Rule 65(a)(2) Fed.R.Civ.Proc. Defendants urged that Judge Battisti's order of November 9, 1971, was *res judicata.* Such order concluded as follows:

> *"By agreement of counsel*, with the approval of the Court, a hearing examiner was appointed in this matter to hear the testimony, to make findings of fact and conclusions of law, and to submit same to the President of Youngstown State University. The hearing examiner has concluded that the University relied upon no constitutionally impermissible reasons in connection with its decision not to renew the plaintiff's contract for the 1971–1972 academic year. The parties have agreed that the plaintiff will be retained through the 1971–1972 academic year by the defendant.

> "Therefore, under consideration, it is ordered that this case be and is hereby dismissed." (Emphasis supplied.)

Judge Contie did not consider that such disposition was *res judicata* and proceeded to hear the matter on the merits. Plaintiff offered evidence to support his claim of unconstitutional treatment by defendants. The report of the hearing examiner appointed in the first case was received in evidence as Joint Exhibit I, and is part of the record presented to us. Whether the findings of the hearing examiner were, or were not, *res judicata*, they did provide plaintiff with full advice as to the reasons for termination of his employment and the opportunity to portray, if he could, the invalidity of such termination. It is not necessary to our decision to consider whether, as a matter of law, plaintiff was entitled to the hearing which was given to him by Judge Battisti's order. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972).

At the conclusion of the trial on the merits, Judge Contie denied the application for an injunction and gave judgment for defendant. He made these critical findings:

> "The evidence in the instant case does not substantiate a claim of violation of First Amendment rights, as there has been no showing that the University's action was made in retaliation for his exercise of the constitutional right of free speech.

> "The Court also finds that the action of the University was not arbitrary, capricious, unreasonable nor discriminatory. The fact that some or most teachers who are hired on a year to year basis are generally rehired does not give use (sic) to a right of reemployment. There is no such common law right. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972). See also Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

> "Further, the court finds that there has been no violation of the due process clause of the Fourteenth Amendment. The Fourteenth Amendment's procedural protection of property safeguards the interests a person has already acquired in specific benefits. Board of Regents, id. Assuming, arguendo that plaintiff has acquired a right to specific benefits, which this court specifically does not find, such would entitle the plaintiff to due process rights, including the right of a hearing on his dismissal and the right to confront witnesses at such hearing. The record illustrates that such procedural safeguards have been satisfied

and a hearing was held pursuant to the court order of April. 8, 1971 in Case C 71–227. [Judge Battisti's order]."

We affirm the judgment of the District Court.