Gary A. COOPER, Plaintiff,

v.

Allen T. CURRY et al.,
Defendants.

Civ. A. No. 73S–119(R).

United States District Court,
S. D. Mississippi, S. D.

Aug. 14, 1975.

C. R. McRae, Pascagoula, Miss., Gary A. Cooper, for plaintiff.

David Cottrell, Jr., Gulfport, Miss., for Allen T. Curry and J. Don Brown.

Marby R. Penton, Pascagoula, Miss., for Ocean Springs Municipal Separate School District.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

Plaintiff, Gary A. Cooper, a white adult resident of Ocean Springs, Mississippi, filed this action against the Ocean Springs Municipal Separate School District; Allen T. Curry, individually and as superintendent of the Ocean Springs schools; J. Don Brown, principal of the Ocean Springs Junior High Annex; and each of the members of the district's board of trustees, in their individual and representative capacities, claiming that he was wrongfully suspended from his teaching job at the Junior High Annex and was denied a renewal of his teaching contract because he exercised certain First Amendment rights. Jurisdiction is asserted under 28 U.S.C. § 1343. He based his action on the First, Fifth and Fourteenth Amendments to the United States Constitution and on 42 U.S.C. §§ 1983 and 1985. Plaintiff alleged that he was employed on June 5, 1972 by the defendant school district under a one year written contract with the implied expectancy of renewal as long as he abided by the district's policies and regulations pertaining to teachers.

Plaintiff charges that during August and September, 1972, he objected to joining the Ocean Springs Teachers Association, a requirement appearing in the 1972–73 Ocean Springs High School Teacher's Handbook. He and his wife,

also a first year teacher in this district, claimed that the local association was affiliated with the Mississippi Education Association (MEA), a state organization, and that a part of the membership dues of the local association is allotted to pay the expenses of delegate teachers to the annual MEA convention to which they objected. Plaintiff averred that he and his wife are members of the Mississippi Teachers Association (MTA), recognized by the National Teachers Association (NTA), whose policies they preferred over MEA. Plaintiff alleged that, after much harassment by school administration officials, he joined the local association. On January 15, 1973, plaintiff was orally notified by his principal, defendant Brown, that his contract would not be renewed. On January 22, 1973, he was so notified in writing "in order that you may seek employment elsewhere." He requested reasons, in writing, for his non-renewal, but averred that Brown refused to give any. On February 15, 1973, plaintiff averred that he was suspended by the superintendent, defendant Curry, for one month with pay, for having a mustache and was advised of his right to an "appeal". He and his attorney appeared before the superintendent on February 26, 1973, at which time, with no prior notice of the charges in writing, the charges were broadened, and plaintiff was suspended for the balance of the school term with full pay and advised of his statutory right to appeal. Relying on Paragraph 7 of "Functions of the Board of Trustees" appearing in "School Board Policies", which provides that the board acts as a court of final appeal for teachers and patrons dissatisfied with a decision of the superintendent, plaintiff and his counsel appeared before the board on March 5, 1973 at a regular meeting of the board which refused to hear plaintiff. In lieu of proceeding further with state remedies, plaintiff elected to file his suit here. In his complaint he charged that the defendants, by their refusal to allow him to teach in the Ocean Springs municipal schools, have breached his contract and jeopardized his future employment in the teaching field. He requested temporary, preliminary and permanent injunctive relief to require defendants to reinstate him, and to require defendants to expunge from his personal record any derogatory remarks, and to refrain from communicating same to any other school district. He also requested compensatory and punitive damages.

Defendants Curry and Brown and the individual defendant members of the school board, on behalf of themselves and the school district, filed separate but similar answers, admitting that plaintiff's contract was not renewed, and that he was subsequently suspended with full pay for his failure to comply with the rules and policies of the board, and that, as to his suspension, he was notified of the charges against him and given a full hearing following which his suspension was upheld. Defendants noted that plaintiff perfected no appeal to the Mississippi State Board of Education, as provided for in Section 6282–26 of the Mississippi Code of 1942, now Section 37–9–59 of the 1972 Code. This statute does not provide for an appeal to the board of trustees. Defendants also denied the jurisdiction of this Court to enjoin defendants from terminating plaintiff's contract, as, at the time of their answer, plaintiff's contract had expired.

Following a hearing on defendants' motions for summary judgment, this Court in a written opinion, dated January 11, 1974, found that reinstatement for the 1972–73 school year, from plaintiff's suspension had perforce become moot, but the Court denied the motions on the grounds that plaintiff was entitled to a hearing on whether his suspension and non-renewal of his contract violated plaintiff's First Amendment rights.

The case was tried to the Court without a jury.

■■ The Court first considers the non-renewal of plaintiff's contract inas-

much as notice of it occurred prior to the suspension. By virtue of Section 37–9–17 of the Mississippi Code of 1972, public school teachers in Mississippi do not have tenure. Paraphrasing language in *Board of Regents v. Roth*, 408 U.S. 564, at page 567, 92 S.Ct. 2701, 33 L.Ed.2d 548, state law clearly leaves the decision whether to rehire a nontenured teacher for another year to the unfettered discretion of school officials. As stated in *Kaprelian v. Texas Woman's University*, 5 Cir., 509 F.2d 133: "It is now familiar law that non-tenured teachers may be discharged for no reason or for any reason not impermissible in itself or as applied." These statements are prefaced on the assumption that the teacher has no well-founded "expectancy" of a contract renewal. In the case sub judice, plaintiff claims that he had such an expectancy and that he and his wife relied on such in buying a home and establishing permanent residency in Ocean Springs. However, this expectancy, to be equivalent to a property interest, discussed in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, must be supported by objective proof. See *LaBorde v. Franklin Parish School Board*, 5 Cir., 510 F.2d 590. Here, plaintiff, in his complaint, conceded that he knew renewal depended on his compliance with school policies and regulations. The trial record is silent as to any school policy, regulation or promise, express or implied, on the part of school officials that he would as a matter of course be accepted for a second year. The Court, accordingly, finds that plaintiff was in the posture of a non-tenured teacher, with no such property interest as would require a hearing at the school level at the time he was notified that his contract would not be renewed. Nor is there any evidence, in connection with the non-renewal, that any defendant publicized such or did anything to impugn plaintiff's name, honor or integrity. See *LaBorde v. Franklin School Parish*, supra. As held in *Roth*, defendants, in the non-renewal of the contract, must have deprived plaintiff of an interest in either "property" or "liberty" before he is entitled to a hearing under due process. They did neither, declining even to specify reasons for the non-renewal, and as stated above, under *Roth* and *Kaprelian*, they were not required to, nor to afford him a hearing.

On February 15, 1973, plaintiff received a written notice from defendant Curry that, due to the violation of the policies of the Ocean Springs school board rules and regulations, he was suspended from February 15, 1973 until March 16, 1973, with pay. The notice further advised plaintiff that he was entitled to a "review or hearing" within ten days as provided by state statute. Plaintiff and his counsel requested what they termed an "appeal". They both agreed to a hearing date on February 23, 1973, within the ten day period. At this hearing, a transcript of which is in evidence, plaintiff was notified that he was being charged with violations of school regulations beginning on August 23, 1972, to date, the charges stemming from plaintiff's classroom conduct and procedures and tardiness in arriving at his classes. Before the charges were enumerated, plaintiff's counsel requested Curry to recuse himself, despite authority under the above-cited Section 6282–26 of the Mississippi Code of 1942 empowering the superintendent to act as a justice of the peace. Curry agreed and the hearing was continued to February 26, 1973. A complete transcript of this hearing is also before the Court. A justice of the peace requested by Curry to hear the matter appeared and declined, expressing the opinion that he had no authority to conduct such a hearing. The matter proceeded before Curry. At this hearing, a list of charges prepared by defendant, Brown, plaintiff's principal, was read to plaintiff, detailing plaintiff's explosive reactions to reproofs about the length of his hair, his initial lack of cooperation in refusing to join the local teacher association, three separate mornings when he was an hour

or more late to his first period class from having overslept, describing his inability to maintain discipline in his classroom, his delay in reporting student insurance money, occasions on which he left his classroom unattended, his criticism of the school administrators, referring to them as "thugs", culminating in his coming to school on February 15, 1973, after an absence of some seven or eight days, wearing a mustache in defiance of the then applicable policy against faculty mustaches. As to his classroom conduct, Brown had personally observed plaintiff's students throwing paper airplanes and notes out the windows and creating such noise as to be disruptive to other classes. It was reported to Brown that plaintiff had made obscene gestures in the classroom and lost his temper, on one occasion forcibly ejecting a girl student, pushing her into Brown's office, and saying he did not want her in his class anymore. Brown was present at this hearing and available for cross-examination as well as were other witnesses subpoenaed by the defendants. On February 27, 1973, Curry, in writing, notified plaintiff that the hearing failed to reveal any reason or cause to lift his suspension. He further said that in his opinion Cooper had repeatedly violated school regulations and school board policies deliberately to cause disruption within his classroom and among his fellow teachers. Curry's decision was to suspend Cooper for the balance of the school term with pay.

It was clear to plaintiff and his counsel that the hearing before Curry was for the purpose of contesting plaintiff's suspension, and not for defendant's refusal to rehire him. However, in plaintiff's brief, following the trial before this Court, plaintiff and his counsel now take the position that defendants failed to afford them proper notice of the suspension, failed to set forth the reasons for both the suspension and the refusal to re-employ, and, in both instances, violated plaintiff's First Amendment rights as well as lack of due process.

The Court has already noted that plaintiff, as a non-tenured teacher with no valid expectancy of rehire, was unentitled to a hearing at the administrative level with prior notice of the reasons why he was not offered re-employment. This does not mean that he is not entitled to a hearing before this Court in view of his charge that he was not rehired solely because of his initial refusal to join the Ocean Springs Teachers Association as an expression of his First Amendment rights. Nor has this Court denied him the opportunity to offer proof on his charge that he was suspended on February 15, 1972 for appearing at this school with a mustache in violation of a school policy forbidding such. This Court unhesitatingly opines that, were these the sole charges proved by plaintiff to be true, plaintiff would be entitled to reinstatement and other relief. But the burden was on plaintiff to prove his charges. After reviewing the evidence in this case, both documentary and live, the Court has concluded that plaintiff has failed in his burden.

Plaintiff concedes that the mustache incident had nothing to do with the non-renewal of his contract, for he did not appear at school with the mustache until a month later. He claims the non-renewal was due to his earlier refusal to join the local teachers association. As noted above, under "Teachers Policies" spelled out in the 1972-73 "Teacher's Handbook", membership in the local teachers association was required, as well as membership in the local Parent-Teachers Association (P.T.A.). Membership in a state teachers association was recommended. In a subsequent notice to all junior high school faculty, dated August 23, 1972, appears the following: "All teachers are required to join P.T.A., Ocean Springs Teachers Association, and either MEA or NEA-MTA. Dues for MEA are $20.00 per year and NEA-MTA dues are $50.00 per year." As also noted above, neither Cooper nor his wife desired to join the local teachers association. Mrs. Cooper,

with an attorney other than plaintiff's counsel, appeared before Curry and worked out a procedure whereby she signed a waiver, relinquishing her right to join. Curry admitted that as a result of this encounter, he drafted a memo, dated September 22, 1972, to all teachers regarding the local association, the pertinent parts of which are as follows:

"The purposes of this organization are; to have a useful organization for the benefit of all teachers and the betterment of the Ocean Springs School District, an organization where teachers may discuss education procedures locally and state wide, policies and procedures regarding teacher welfare within the system and the state.

"Membership fee for joining the local teacher organization is at present $2.-00 per year. This money is used for such things as flowers, cards, gifts, etc. The remaining money is used toward expenses for delegates to the State Convention, M.E.A. or M.T.A.-N.E.A., based on the amount left in the fund, divided by the number of teachers in its organization. For example: if 150 teachers belong to M.E.A. and each teacher's portion that is left after expenses of flowers, gifts, etc. are paid, amounts to $1.00 then each teacher may apply this dollar toward delegates, or they may receive this dollar back, whichever they desire. The same applies to members of M.T.A.-N.E.A.

"Monies received will not be used for State Organizations without the consent of the individual teacher. If a teacher desires not to join the local Teachers' Organization, he or she may sign a waiver in the Superintendent's Office to that effect."

Mrs. Cooper was apparently satisfied with the above statement and the execution of her waiver, and she continues to teach in the system without having joined the local association. Mr. Cooper was not satisfied, saw no reason to sign a waiver, and said so loud and clear, and by his own admission, to his students and his fellow teachers. Considerably prior to his January 15, 1973, notice that his contract would not be renewed, Cooper became disenchanted with his membership in MTA-NEA, told defendant Brown so on November 12, 1972, and said he wanted to start a new day of cooperation with the school administration. He joined the local teachers association, saying the annual $2.00 membership fee was not worth jeopardizing his career. Cooper now claims that he was harassed into joining and that his previous refusal to join is why he was not re-elected. If this alone were the reason, the Court would give some credence to his argument. However, according to the list of charges made by Brown at the school hearing, supported by the testimony of other faculty members, and repeated in detail at the hearing before this Court, Cooper's lack of cooperation in this comparatively minor matter, was merely one incident in his course of defiant conduct, inimical to the school system and his own welfare as a beginning teacher. As early as September 19, 1972, Superintendent Curry felt obligated to write to Cooper that he had reported late for work three times in the first four weeks of the school year. On the day before this letter, defendant Brown had had to send another faculty member to take care of Cooper's class until Cooper showed up. This person reported to Brown that a student commented that Cooper had probably overslept again, and if he could do it, why couldn't they. Brown's testimony was that Cooper's repeated tardiness was not a matter of just a few minutes, but in each instance was from half an hour to over an hour. In each instance Brown had to get someone else to fill in for Cooper or leave his class unattended. As to Cooper's conduct in the classroom, Brown reported five or six times that he was either called to quell a disturbance, or a disturbance was reported to him. He noted that on August 30 and September 20, 1972, he had to go to Cooper's classroom to stop the noise; on September 8, 1972, while Cooper's class was unattended, a

student received a bloody nose; on September 21, 1972, Brown talked to Cooper about the quantity of "paper airplanes" being thrown out of the classroom window. Cooper's reply was that he could not teach and watch at the same time. Cooper's solution was to close the windows, although it was a hot day. On November 11, 1972, Brown told Cooper that students and parents had complained that he was using in his classroom gestures and language unbecoming to a teacher. Brown said that Cooper admitted the gesture but denied that his language was profane. On November 22, 1972, Brown stated that Cooper brought a student to the office leaving a note that he would not have her in his class again. She was transferred. On December 5, 1972, Brown said Cooper lost his self-control in dealing with another girl student, bringing her bodily to the office and shoving her inside. Cooper was trembling with anger and said he did not want her in his class anymore. The girl complained that Cooper had hurt her, jerking her from her desk and pushing her into the office. On January 8, 1973, the guidance counselor submitted his report to Brown for the second six weeks' term, showing that 45.6% of Cooper's students, or 69 out of 151, had received failing grades. Brown identified as an exhibit herein an evaluation report containing 34 items, which he made of Cooper's teaching performance as of January 5, 1973. From the average grade of all teachers, Cooper's rating was below average, particularly below average in maintaining the decorum of the classroom.

Cooper, at the hearing and in his brief, has charged that Curry, in the fall of 1972, directed Brown to keep a close check on Cooper. Brown denied that Cooper was singled out, saying that, as a school principal, he was expected to keep a personnel file on all his teachers. At the time he advised Cooper he would not be recommended for the following year,

Brown said he then turned over Cooper's personnel file to Curry.

Federal courts have repeatedly held, in cases such as this, that they are loath to substitute their judgment for that of the appropriate school officials, unless necessary to protect federal rights. This Court subscribes to this doctrine, and on the basis of the evidence before it, finds that the defendants had a plethora of valid reasons, exclusive of the reason charged by Cooper, not to re-elect him for the 1973–74 term. As the Court has earlier found, the school authorities refrained from publication of these reasons out of deference to plaintiff's efforts to seek other employment, revealing them only at hearings insisted upon by plaintiff.

As to plaintiff's suspension on February 15, 1973, which he attributes to wearing a mustache, the grooming policy established by the board of trustees was initially: "All teachers to report to school each day well-groomed, so that they will not be criticized by students and patrons as to their personal appearance." In the 1972–73 students' handbook, grooming requirements for students did not permit mustaches, goatees or beards. At the February 5, 1973, meeting of the Board of Trustees that board clarified the faculty grooming requirement to be the same as that required of students. A notice to this effect was posted on the school bulletin board.[1]

Mr. Cooper was on sick leave from February 5 through February 13, 1973. On February 14, 1973, he appeared at school with a mustache. Another male teacher who had grown a mustache, and who was called as plaintiff's witness, testified that Cooper had told him of a recent Mississippi federal court decision holding that high school regulations could not validly prohibit a teacher from his constitutional right to wear his hair, including a mustache, as he chose. Cooper not only acknowledged that this

---

1. These grooming codes have since been alleviated and there is no longer a restriction against mustaches for either students or faculty.

conversation took place, but said that this decision, coupled with his not being rehired, was the impetus for him to grow his. The other teacher acknowledged that he, at first, refused to shave off his mustache and was suspended. After talking with Brown who told him he was a good teacher, this teacher reconsidered, shaved off his mustache, and was reinstated. Brown himself was not at school on February 14, 1973, but said when he returned on February 15, a number of teachers reported to him that Cooper was back with a mustache. Brown talked to Cooper and asked Cooper to shave. Cooper refused. They both reported to Curry's office, but not before Cooper used Brown's telephone to call his lawyer. Curry, Cooper and Cooper's attorney met in Curry's office, at which time Cooper was told he was suspended for 30 days with pay, but would be reinstated sooner if he shaved. Cooper refused, and Curry followed this refusal with written notice to Cooper that he was suspended until March 16, 1973, with pay "due to violations of policies of Ocean Springs School Board rules and regulations. . . ." Cooper was likewise advised *of his right to a hearing as provided by statute*. Two defendant board members testified that the board refused to hear Cooper's appeal on the advice of counsel who said the state statute controlled over the board policy to hear appeals from decisions of the superintendent.

Cooper in his lawsuit contends that the defendants were not themselves in compliance with Section 6282–26 of the Mississippi Code of 1942 in that he was not notified of the charges against him at least ten days before the hearing provided for in that section. In this he is technically correct, although he admittedly was familiar with school rules and regulations. Certainly he was aware of his numerous reprimands. Be that as it may, this point may be disposed of

quickly. Following the filing of his lawsuit, plaintiff has had the benefit of pre-trial discovery, including access to his personnel file, containing, inter alia, the accumulation of charges reduced to writing by Brown, and a list of defendants' witnesses in preparation for this trial. Although, while on the stand himself, he tried to minimize the importance of the array of charges against him, he has denied none of them, including a charge, made after the decision not to rehire him, that he had referred to administration officials as thugs. According to his own statement he did this at a meeting of the local teachers association and was referring to persons sitting on the back row. The back row included Curry and Brown.

Although defendants have done nothing to publicize the difficulties with Cooper, he, himself, admitted that he gave the story of his supension, together with a copy of his complaint, to the local press.

As to Cooper's suspension, he suffered no monetary damage inasmuch as he received his full salary to the end of his year's contract. The Court finds that the action of Curry in suspending Cooper was not arbitrary but was justified in view of the continued course of Cooper's conduct in not cooperating with school officials, culminating in his defiance of those authorities by appearing for classes with a mustache, a circumstance which in and of itself would not have warranted a suspension, but, which, done with deliberateness, was in the words of his principal, "the straw that broke the camel's back."

The Court declines to award any relief to plaintiff, injunctive or money damages, and finds that his action should be dismissed at plaintiff's cost.

An appropriate order to this effect may be submitted with costs of court taxed to the plaintiff.