LOREN A. EVENRUD AND OTHERS v.
PARK AND RECREATION BOARD OF THE
CITY OF MINNEAPOLIS AND OTHERS.

245 N. W. 2d 609.

September 3, 1976—Nos. 46128, 46579.

O'Neill, Burke & O'Neill, Joseph T. O'Neill, and Michael R. O'Brien, for appellants.

Popham, Haik, Schnobrich, Kaufman & Doty and David S. Doty, for respondent Park and Recreation Board.

Walter J. Duffy, Jr., City Attorney, and Arvid M. Falk, Assistant City Attorney, for respondent city of Minneapolis.

Heard before Todd, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

This is an appeal from an order of the Hennepin County District Court affirming actions of the Minneapolis Park and Recreation Board (the Board) and the Minneapolis Civil Service Commission (the Commission).[1] The matter came before the district court on writs of certiorari. We affirm.

Appellants are all full-time school teachers. Appellant Laurence E. Hendrickson in 1969, and the other appellants in 1970, applied to the Board and were hired to serve as park patrolmen. In these positions they supplemented the regular patrol force during the summer months and on occasional weekends during the balance of the year. Their work for the Board was scheduled so as not to conflict with their teaching duties. During the summer appellants would average 40 hours of work per week and during the school year, on some weekends, one or two 8-hour days. The total hours worked in each of years 1970 and 1971 varied among the appellants, ranging from a low of 532 hours to a high of 1,184.

In the early part of 1972, Minn. St. 626.846[2] was brought to

---

[1] Initially appellants appealed from the district court's order denying their motion to amend the order of affirmance. As respondent Board correctly points out in its brief, that order is nonappealable; cf. Kempf v. Kempf, 287 Minn. 529, 177 N. W. 2d 40 (1970); Johnson v. Giese, 230 Minn. 185, 40 N. W. 2d 909 (1950). However, the appeal from the order of affirmance is proper, Rules of Civil Appellate Procedure, Rule 103.03 (h) (special proceeding); 3 Hetland & Adamson, Minnesota Practice, Civil Rules Ann. p. 282, and was timely made. Appellants were not served with notice of the filing of that order until December 30, 1975. The appeal was taken January 5, 1976. The two appeals were consolidated for hearing by order of this court dated February 6, 1976.

[2] Minn. St. 626.846 provides: "Subdivision 1. Notwithstanding any general or local law or charter to the contrary, any peace officer employed or elected on or after July 1, 1967, by any state, county, municipality or joint or contractual combination thereof of the state of Minnesota with a population of more than 1,000 according to the last

the attention of the Board, apparently by the Minnesota Police and Peace Officers Association. Subd. 1 of that section makes mandatory an approved training course for all peace officers employed by a municipality having a population of 1,000 persons or more. The training course must be attended within 12 months of the officer's appointment. Subd. 2 provides that an officer hired on a temporary basis or for a probationary term who fails to complete the course within the time prescribed by the regulations promulgated pursuant to §§ 626.841 to 626.854 "shall forfeit his position." This statute became effective July 1, 1967.

In order to avoid violation of the statute, the Board decided to reassign those employed as seasonal park patrolmen. On May 4, 1972, the Board requested the Civil Service Commission to establish a new position entitled park patrol agents. The functional change effected by the new position was essentially to relieve those employed as seasonal park patrolmen of their law-enforcement responsibilities. They would not be permitted to carry weapons, as they had been, and would not be accorded police powers of arrest. Otherwise their duties remained substantially the same.

The position of park patrol agent was established by the Commission on May 11, 1972. The starting salary for the new position was approximately $150 less per month than that for a park

---

federal census shall attend a peace officers training course within 12 months of his appointment, except as provided in section 626.853.

"Subd. 2. Every peace officer who shall be appointed by any state, county, municipality or joint or contractual combination thereof of the state of Minnesota with a population of more than 1,000 according to the last federal census, on a temporary basis or for a probationary term, shall forfeit his position unless he has satisfactorily completed, within the time prescribed by the rules and regulations promulgated pursuant to sections 626.841 to 626.854, an approved peace officer training program, except as provided in section 626.853. Any other peace officer employed or elected by any state, county, municipality or joint or contractual combination thereof, may attend peace officer training courses subject to the rules and regulations promulgated pursuant to sections 626.841 to 626.854."

patrolman. On May 25 a letter from the Board's personnel officer was sent to all those who had worked as park patrolmen and had been hired subsequent to July 1, 1967 (the effective date of Minn. St. 626.846), informing them of the change.

"Due to state law restrictions on the employment of Seasonal Park Patrolman personnel who have not had police training approved and certified by the State of Minnesota, the Park and Recreation Board has had to reorganize and create a substitute classification.

"Our Civil Service Commission has classified these new positions as Park Patrol Agents.

"Employees in the new classification will work closely with regular park police personnel. They will perform general patrol work in the parks and beaches, but will not have regular police enforcement responsibilities. Neither will they carry sidearms. The starting pay rate has been set at $699.00 per month.

"You are on the Civil Service eligible list for Seasonal Park Patrolman, and we have obtained permission to fill Park Patrol Agent vacancies from this list.

"You will be contacted as soon as we begin to fill these summer positions. If you have any questions on this matter, please call Captain James Curran of the Park Police Section."

On June 20, a general meeting of the seasonal patrol staff was held. It was attended by the Board's personnel officer, its attorney, and a park police lieutenant. At this meeting the group was instructed on their new duties and especially on the restriction with respect to law enforcement.

The appellants continued their employment with the Board at the reduced salary during the summers of 1972 and 1973. With the exception of a complaint by appellants Hendrickson and Loren Evenrud in 1972 to their immediate supervisor, no protest was made by appellants until January 3, 1974, when a formal protest was filed with the Commission, apparently pursuant to Commission Rule 2.06. On April 11, 1974, a hearing was held be-

fore the Commission. The decision of the Commission was stated in a motion which was adopted on June 13, 1974. A new third position entitled "Patrolman Parks, Permanent Seasonal, Uncertified Peace Officer" was established by the Commission and appellants were reclassified to that position retroactively, effective May 11, 1972. The duties of this new position were defined to include the present job description for park patrolman, permanent seasonal, except that members of this new classification would not be allowed to make arrests as police officers or carry firearms unless appropriately certified by the state. The matter was then referred to the Board for determination of a salary range for the new classification.

On July 17, 1974, the Board held a meeting and set the pay for the new classification to be the same as that of a park patrol agent. This action also was made retroactive, effective May 1, 1972. None of the appellants was given notice of this hearing or the opportunity to be heard although such notice and opportunity were specifically requested by appellants' attorney.

Appellants sought review of the actions of both the Commission and the Board by certiorari in the district court, which ordered the matters consolidated for hearing. Following that hearing, the court affirmed the Commission's decision to reclassify the appellants retroactively and the Park Board's decision to reduce their pay rate retroactively.

Appellants do not contest the authority of the Commission to create the new position to which appellants were assigned, or to assign them to it. Nor do they contest the substantive reasonableness of that action. Their complaint is that they were denied procedural due process guaranteed them by the Fourteenth Amendment of the United States Constitution[3] and Article I, § 7, of the Minnesota Constitution.

---

[3] See, Arnett v. Kennedy, 416 U. S. 134, 94 S. Ct. 1633, 40 L. ed. 2d 15 (1974); Board of Regents v. Roth, 408 U. S. 564, 92 S. Ct. 2701, 33 L. ed. 2d 548 (1972); Perry v. Sindermann, 408 U. S. 593, 92 S. Ct. 2694, 33 L. ed. 2d 570 (1972).

The real source of the difficulty in this case, as we perceive it, is the failure of Minn. St. 626.846 to clearly assign the responsibility, either with the employee or employer, to see that a police officer receives the required training. If it is the employee, obviously he has no further rights once his probationary period expires because he forfeits his position under the statute and can be fired at will. If, on the other hand, it is the duty of the employer to advise the employees of the statutory requirements for the job and to see that the employee receives the necessary training, then the failure of the employer to do so, it seems to us, should not result in either the loss of the employee's job or his tenure in that job. These are fundamental questions the legislature has left unanswered, and which, as evidenced by this case, have the potential for creating serious inequities and hardships in the application of an otherwise thoughtful and sound piece of legislation. We commend these questions to the legislature for consideration.

On the merits, we agree with the trial court that the record indicates a waiver by appellants of their rights. Each employee was sent a notice of the proposed reclassification and was orally briefed on the implications thereof by representatives of the Board. Both employer and employee are deemed to know the civil service rules. Minneapolis Civil Service Rule 2.06 provides for the filing of protests.[4] The appellants did not file a protest at the time that the changes were made effective in 1972. A formal objection was not filed until January 1974. The civil service rules also provide that an employee is deemed to vacate one position when he accepts another. Minneapolis Civil Service Rule 9.04 provides:

[4] Minneapolis Civil Service Commission Rule 2.06 provides in part: "The Commission shall receive and consider any protest by an employee or appointing authority in any matter concerned with the administration of the Civil Service law and these rules, and after such investigation and hearing or either of them as the Commission may deem desirable in any case, shall indicate to the Personnel Director such remedial action as it may deem warranted."

"Whenever the incumbent of any position in the classified service of the City accepts appointment to a position of another class he shall be considered to have resigned from the former position."

Here the appellants all took the new position and accepted the new pay scale without timely objection.

We hold, therefore, that, under the circumstances of this case and the applicable civil service provisions, appellants must be considered to have waived whatever rights they had at the date of their reassignment. Furthermore, this decision is consistent with the equities of the case. Respondents dealt fairly with appellants, notifying them by letter of the change and the reasons for it and consulting personally with appellants. While appellants were paid less, the requirements of the position were reduced accordingly, eliminating the law-enforcement responsibilities.

Affirmed.