# PERRY ET AL. *v.* SINDERMANN

No. 70–36.  Argued January 18, 1972—Decided June 29, 1972

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, and REHNQUIST, JJ., joined. BURGER, C. J., filed a concurring opinion, *post,* p. 603. BRENNAN, J., filed an opinion dissenting in part, in which DOUGLAS, J., joined, *post,* p. 604. MARSHALL, J., filed an opinion dissenting in part, *post,* p. 605. POWELL, J., took no part in the decision of the case.

*W. O. Shafer* argued the cause for petitioners. With him on the brief was *Lucius D. Bunton.*

*Michael H. Gottesman* argued the cause for respondent. With him on the brief were *George H. Cohen* and *Warren Burnett.*

Briefs of *amici curiae* urging affirmance were filed by *David Rubin* and *Richard J. Medalie* for the National Education Association; by *John Ligtenberg* and *Andrew J. Leahy* for the American Federation of Teachers; and by *Herman I. Orentlicher* and *William W. Van Alstyne* for the American Association of University Professors.

MR. JUSTICE STEWART delivered the opinion of the Court.

From 1959 to 1969 the respondent, Robert Sindermann, was a teacher in the state college system of the State of Texas. After teaching for two years at the University of Texas and for four years at San Antonio Junior College, he became a professor of Government and Social Science at Odessa Junior College in 1965. He was employed at the college for four successive years, under a series of one-year contracts. He was successful enough to be appointed, for a time, the cochairman of his department.

During the 1968–1969 academic year, however, controversy arose between the respondent and the college administration. The respondent was elected president of the Texas Junior College Teachers Association. In this capacity, he left his teaching duties on several occasions to testify before committees of the Texas Legis-

lature, and he became involved in public disagreements with the policies of the college's Board of Regents. In particular, he aligned himself with a group advocating the elevation of the college to four-year status—a change opposed by the Regents. And, on one occasion, a newspaper advertisement appeared over his name that was highly critical of the Regents.

Finally, in May 1969, the respondent's one-year employment contract terminated and the Board of Regents voted not to offer him a new contract for the next academic year. The Regents issued a press release setting forth allegations of the respondent's insubordination.[1] But they provided him no official statement of the reasons for the nonrenewal of his contract. And they allowed him no opportunity for a hearing to challenge the basis of the nonrenewal.

The respondent then brought this action in Federal District Court. He alleged primarily that the Regents' decision not to rehire him was based on his public criticism of the policies of the college administration and thus infringed his right to freedom of speech. He also alleged that their failure to provide him an opportunity for a hearing violated the Fourteenth Amendment's guarantee of procedural due process. The petitioners— members of the Board of Regents and the president of the college—denied that their decision was made in retaliation for the respondent's public criticism and argued that they had no obligation to provide a hearing.[2] On the basis of these bare pleadings and three

---

[1] The press release stated, for example, that the respondent had defied his superiors by attending legislative committee meetings when college officials had specifically refused to permit him to leave his classes for that purpose.

[2] The petitioners claimed, in their motion for summary judgment, that the decision not to retain the respondent was really based on his insubordinate conduct. See n. 1, *supra*.

brief affidavits filed by the respondent,[3] the District Court granted summary judgment for the petitioners, It concluded that the respondent had "no cause of action against the [petitioners] since his contract of employment terminated May 31, 1969, and Odessa Junior College has not adopted the tenure system." [4]

The Court of Appeals reversed the judgment of the District Court. 430 F. 2d 939. First, it held that, despite the respondent's lack of tenure, the nonrenewal of his contract would violate the Fourteenth Amendment if it in fact was based on his protected free speech. Since the actual reason for the Regents' decision was "in total dispute" in the pleadings, the court remanded the case for a full hearing on this contested issue of fact. *Id.,* at 942–943. Second, the Court of Appeals held that, despite the respondent's lack of tenure, the failure to allow him an opportunity for a hearing would violate the constitutional guarantee of procedural due process if the respondent could show that he had an "expectancy" of re-employment. It, therefore, ordered that this issue of fact also be aired upon remand. *Id.,* at 943–944. We granted a writ of certiorari, 403 U. S. 917, and we have considered this case along with *Board of Regents* v. *Roth, ante,* p. 564.

## I

The first question presented is whether the respondent's lack of a contractual or tenure right to re-employment, taken alone, defeats his claim that the nonrenewal of his contract violated the First and Fourteenth Amendments. We hold that it does not.

---

[3] The petitioners, for whom summary judgment was granted, submitted no affidavits whatever. The respondent's affidavits were very short and essentially repeated the general allegations of his complaint.

[4] The findings and conclusions of the District Court—only several lines long—are not officially reported.

For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser* v. *Randall*, 357 U. S. 513, 526. Such interference with constitutional rights is impermissible.

We have applied this general principle to denials of tax exemptions, *Speiser* v. *Randall, supra,* unemployment benefits, *Sherbert* v. *Verner*, 374 U. S. 398, 404–405, and welfare payments, *Shapiro* v. *Thompson*, 394 U. S. 618, 627 n. 6; *Graham* v. *Richardson*, 403 U. S. 365, 374. But, most often, we have applied the principle to denials of public employment. *United Public Workers* v. *Mitchell*, 330 U. S. 75, 100; *Wieman* v. *Updegraff*, 344 U. S. 183, 192; *Shelton* v. *Tucker*, 364 U. S. 479, 485–486; *Torcaso* v. *Watkins*, 367 U. S. 488, 495–496; *Cafeteria Workers* v. *McElroy*, 367 U. S. 886, 894; *Cramp* v. *Board of Public Instruction*, 368 U. S. 278, 288; *Baggett* v. *Bullitt*, 377 U. S. 360; *Elfbrandt* v. *Russell*, 384 U. S. 11, 17; *Keyishian* v. *Board of Regents*, 385 U. S. 589, 605–606; *Whitehill* v. *Elkins*, 389 U. S. 54; *United States* v. *Robel*, 389 U. S. 258; *Pickering* v. *Board of Education*, 391 U. S. 563, 568. We have applied the principle regardless of the public employee's contractual or other claim to a job. Compare *Pickering* v. *Board of Education, supra,* with *Shelton* v. *Tucker, supra.*

Thus, the respondent's lack of a contractual or tenure

"right" to re-employment for the 1969–1970 academic year is immaterial to his free speech claim. Indeed, twice before, this Court has specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights. *Shelton* v. *Tucker, supra; Keyishian* v. *Board of Regents, supra.* We reaffirm those holdings here.

In this case, of course, the respondent has yet to show that the decision not to renew his contract was, in fact, made in retaliation for his exercise of the constitutional right of free speech. The District Court foreclosed any opportunity to make this showing when it granted summary judgment. Hence, we cannot now hold that the Board of Regents' action was invalid.

But we agree with the Court of Appeals that there is a genuine dispute as to "whether the college refused to renew the teaching contract on an impermissible basis—as a reprisal for the exercise of constitutionally protected rights." 430 F. 2d, at 943. The respondent has alleged that his nonretention was based on his testimony before legislative committees and his other public statements critical of the Regents' policies. And he has alleged that this public criticism was within the First and Fourteenth Amendments' protection of freedom of speech. Plainly, these allegations present a bona fide constitutional claim. For this Court has held that a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment. *Pickering* v. *Board of Education, supra.*

For this reason we hold that the grant of summary judgment against the respondent, without full exploration of this issue, was improper.

## II

The respondent's lack of formal contractual or tenure security in continued employment at Odessa Junior College, though irrelevant to his free speech claim, is highly relevant to his procedural due process claim. But it may not be entirely dispositive.

We have held today in *Board of Regents* v. *Roth, ante,* p. 564, that the Constitution does not require opportunity for a hearing before the nonrenewal of a nontenured teacher's contract, unless he can show that the decision not to rehire him somehow deprived him of an interest in "liberty" or that he had a "property" interest in continued employment, despite the lack of tenure or a formal contract. In *Roth* the teacher had not made a showing on either point to justify summary judgment in his favor.

Similarly, the respondent here has yet to show that he has been deprived of an interest that could invoke procedural due process protection. As in *Roth,* the mere showing that he was not rehired in one particular job, without more, did not amount to a showing of a loss of liberty.[5] Nor did it amount to a showing of a loss of property.

But the respondent's allegations—which we must construe most favorably to the respondent at this stage of the litigation—do raise a genuine issue as to his interest in continued employment at Odessa Junior College. He alleged that this interest, though not secured by a formal contractual tenure provision, was secured by a no less binding understanding fostered by the college administra-

---

[5] The Court of Appeals suggested that the respondent might have a due process right to some kind of hearing simply if he *asserts* to college officials that their decision was based on his constitutionally protected conduct. 430 F. 2d, at 944. We have rejected this approach in *Board of Regents* v. *Roth, ante,* at 575 n. 14.

tion. In particular, the respondent alleged that the college had a *de facto* tenure program, and that he had tenure under that program. He claimed that he and others legitimately relied upon an unusual provision that had been in the college's official Faculty Guide for many years:

> *"Teacher Tenure:* Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work."

Moreover, the respondent claimed legitimate reliance upon guidelines promulgated by the Coordinating Board of the Texas College and University System that provided that a person, like himself, who had been employed as a teacher in the state college and university system for seven years or more has some form of job tenure.[6]

---

[6] The relevant portion of the guidelines, adopted as "Policy Paper 1" by the Coordinating Board on October 16, 1967, reads:

"A. Tenure

"Tenure means assurance to an experienced faculty member that he may expect to continue in his academic position unless adequate cause for dismissal is demonstrated in a fair hearing, following established procedures of due process.

"A specific system of faculty tenure undergirds the integrity of each academic institution. In the Texas public colleges and universities, this tenure system should have these components:

"(1) Beginning with appointment to the rank of full-time instructor or a higher rank, the probationary period for a faculty member shall not exceed seven years, including within this period appropriate full-time service in all institutions of higher education. This is subject to the provision that when, after a term of probationary service of more than three years in one or more institutions, a faculty member is employed by another institution, it may be agreed in writing that his new appointment is for a probationary period

Thus, the respondent offered to prove that a teacher with his long period of service at this particular State College had no less a "property" interest in continued employment than a formally tenured teacher at other colleges, and had no less a procedural due process right to a statement of reasons and a hearing before college officials upon their decision not to retain him.

We have made clear in *Roth, supra,* at 571–572, that "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." *Id.,* at 577. A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. *Ibid.*

A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient "cause" is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a "property" interest in re-employment. For example, the law of contracts in most, if not all, jurisdictions long has employed

---

of not more than four years (even though thereby the person's total probationary period in the academic profession is extended beyond the normal maximum of seven years).

. . . . .

"(3) Adequate cause for dismissal for a faculty member with tenure may be established by demonstrating professional incompetence, moral turpitude, or gross neglect of professional responsibilities."

The respondent alleges that, because he has been employed as a "full-time instructor" or professor within the Texas College and University System for 10 years, he should have "tenure" under these provisions.

a process by which agreements, though not formalized in writing, may be "implied." 3 A. Corbin on Contracts §§ 561–572A (1960). Explicit contractual provisions may be supplemented by other agreements implied from "the promisor's words and conduct in the light of the surrounding circumstances." *Id.*, at § 562. And, "[t]he meaning of [the promisor's] words and acts is found by relating them to the usage of the past." *Ibid.*

A teacher, like the respondent, who has held his position for a number of years, might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure. Just as this Court has found there to be a "common law of a particular industry or of a particular plant" that may supplement a collective-bargaining agreement, *Steelworkers* v. *Warrior & Gulf Co.*, 363 U. S. 574, 579, so there may be an unwritten "common law" in a particular university that certain employees shall have the equivalent of tenure. This is particularly likely in a college or university, like Odessa Junior College, that has no explicit tenure system even for senior members of its faculty, but that nonetheless may have created such a system in practice. See C. Byse & L. Joughin, Tenure in American Higher Education 17–28 (1959).[7]

In this case, the respondent has alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent "suf-

---

[7] We do not now hold that the respondent has any such legitimate claim of entitlement to job tenure. For "[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Board of Regents* v. *Roth, supra,* at 577. If it is the law of Texas that a teacher in the respondent's position has no contractual or other claim to job tenure, the respondent's claim would be defeated.

ficient cause." We disagree with the Court of Appeals insofar as it held that a mere subjective "expectancy" is protected by procedural due process, but we agree that the respondent must be given an opportunity to prove the legitimacy of his claim of such entitlement in light of "the policies and practices of the institution." 430 F. 2d, at 943. Proof of such a property interest would not, of course, entitle him to reinstatement. But such proof would obligate college officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency.

Therefore, while we do not wholly agree with the opinion of the Court of Appeals, its judgment remanding this case to the District Court is

*Affirmed.*

MR. JUSTICE POWELL took no part in the decision of this case.

MR. CHIEF JUSTICE BURGER, concurring.*

I concur in the Court's judgments and opinions in *Sindermann* and *Roth*, but there is one central point in both decisions that I would like to underscore since it may have been obscured in the comprehensive discussion of the cases. That point is that the relationship between a state institution and one of its teachers is essentially a matter of state concern and state law. The Court holds today only that a state-employed teacher who has a right to re-employment under state law, arising from either an express or implied contract, has, in turn, a right guaranteed by the Fourteenth Amendment to some form of prior administrative or academic hearing on the cause

---

*This opinion applies also to No. 71–162, *Board of Regents of State Colleges et al.* v. *Roth, ante,* p. 564.

for nonrenewal of his contract. Thus, whether a particular teacher in a particular context has any right to such administrative hearing hinges on a question of state law. The Court's opinion makes this point very sharply:

> "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Board of Regents* v. *Roth, ante,* at 577.

Because the availability of the Fourteenth Amendment right to a prior administrative hearing turns in each case on a question of state law, the issue of abstention will arise in future cases contesting whether a particular teacher is entitled to a hearing prior to nonrenewal of his contract. If relevant state contract law is unclear, a federal court should, in my view, abstain from deciding whether he is constitutionally entitled to a prior hearing, and the teacher should be left to resort to state courts on the questions arising under state law.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS joins, dissenting in No. 71–162, *ante,* p. 564, and dissenting in part in No. 70–36.

Although I agree with Part I of the Court's opinion in No. 70–36, I also agree with my Brother MARSHALL that "respondent[s] [were] denied due process when [their] contract[s] [were] not renewed and [they were] not informed of the reasons and given an opportunity to respond." *Ante,* at 590. Since respondents were entitled to summary judgment on that issue, I would affirm the judgment of the Court of Appeals in No. 71–162, and, to the extent indicated by my Brother MARSHALL, I would modify the judgment of the Court of Appeals in No. 70–36.

MR. JUSTICE MARSHALL, dissenting in part.

Respondent was a teacher in the state college system of the State of Texas for a decade before the Board of Regents of Odessa Junior College decided not to renew his contract. He brought this suit in Federal District Court claiming that the decision not to rehire him was in retaliation for his public criticism of the policies of the college administration in violation of the First Amendment, and that because the decision was made without giving him a statement of reasons and a hearing, it denied him the due process of law guaranteed by the Fourteenth Amendment. The District Court granted summary judgment for petitioners, but the Court of Appeals reversed and remanded the case for further proceedings. This Court affirms the judgment of the Court of Appeals.

I agree with Part I of the Court's opinion holding that respondent has presented a bona fide First Amendment claim that should be considered fully by the District Court. But, for the reasons stated in my dissenting opinion in *Board of Regents* v. *Roth,* No. 71–162, *ante,* p. 587, I would modify the judgment of the Court of Appeals to direct the District Court to enter summary judgment for respondent entitling him to a statement of reasons why his contract was not renewed and a hearing on disputed issues of fact.