**Charles R. KRUKAR, Plaintiff,**

v.

**Donald ALEXANDER, Commissioner of Internal Revenue Service, and Roger C. Beck, District Director, Internal Revenue Service, Chicago District, Defendants.**

**No. 73 C 1246.**

United States District Court, N. D. Illinois, E. D.

Jan. 25, 1974.

Robert M. Tobias, Michael E. Goldman and Thomas E. Angelo, Washington, D. C., Harvey M. Silets and Theodore A. Sinars, Chicago, Ill., for plaintiff.

James R. Thompson, U. S. Atty., for defendants.

## MEMORANDUM OPINION

*Motions for Summary Judgment*

MAROVITZ, District Judge.

The plaintiff, Charles R. Krukar, was discharged on May 11, 1973, from employment in the Chicago District of the Internal Revenue Service. In this action Krukar seeks a "declaratory judgment declaring that the procedure for the termination of probationary employees violates the due process requirements of the Fifth Amendment to the U. S. Constitution", "a declaratory judgment declaring that the procedures used in terminating plaintiff violated the .Fifth Amendment to the U. S. Constitution", and a "preliminary injunction ordering defendants, their agents or representa-

tives or others acting in concert therewith to reinstate plaintiff to his former position with all the rights and privileges to which he is thereby entitled." Both plaintiff and defendants have filed motions for summary judgment, and we proceed to a consideration of those motions.

## I.

Plaintiff Krukar began employment with the Internal Revenue Service on June 11, 1972, when he received an emergency-indefinite appointment as a taxpayer service representative, assigned to the Economic Stabilization Program in the Chicago District of the Internal Revenue Service. This appointment was made pursuant to 5 CFR § 230.402, which provides, *inter alia*, that the employee does not acquire a competitive civil service status and may be terminated any time during the "trial period" of one year. If a trial employee is terminated for unsatisfactory performance during the first year, he is entitled to the procedures set forth in 5 CFR § 315.804. This section provides as follows:

> When an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusion as to the inadequacies of his performance or conduct.

Subsequent to evaluations on July 13, 1972, and September 19, 1972, and despite some weaknesses in plaintiff's performance, Krukar was promoted to a GS-5.

On January 29, 1973, plaintiff was transferred to the Collection and Taxpayer Service Division of the district office of the Internal Revenue Service. The Government alleges that this move was necessitated by the decreased workload of the stabilization division and was an attempt to find a permanent position to which the plaintiff could be converted. Following a negative evaluation by his supervisor near the end of March, 1973, and after unsuccessfully interviewing for the audit division of the Internal Revenue Service, the plaintiff's temporary assignment to the Collection and Taxpayer Service was terminated, and plaintiff was returned to the stabilization division, effective April 3, 1973.

During the week of April 16, 1973, plaintiff's telephone calls were monitored as part of the normal evaluation program. The first two days of monitoring revealed plaintiff's answers to taxpayer inquiries regarding economic stabilization regulations were deficient as to accuracy and courtesy. Government Exhibit I. He was informed of these errors, and monitored more closely during the remainder of the week. Plaintiff was counselled and found to be unresponsive to criticism of his work. Subsequent monitoring revealed no improvement and the plaintiff was informed that the quality of his work was unsatisfactory. Government Exhibit I.

On April 27, 1973, plaintiff received a letter from William H. Krodel, Acting District Director of the Internal Revenue Service, informing plaintiff that he was being terminated as of May 11, 1973, and stating the reasons therefor.

Plaintiff complains that he was given only 14 days notice, rather than the 15 days required by the regulations promulgated by the Internal Revenue Service. In addition plaintiff, a probationary employee in his tenth month of service, was not evaluated on the basis of a written probationary appraisal as required by Ch. 315, Subchapter 8–3(a) of the Federal Personnel Manual (FPM), and § 0430.36 of the Internal Revenue Manual (IRM). Plaintiff's supervisor, Arnold J. Barrie, admits he never made the required appraisal (Plaintiff Exhibit 2).

Plaintiff further claims that he was entitled to a hearing either prior to or subsequent to the termination, but that he never received it.

On May 11, 1973, a motion for a temporary restraining order was argued in the District Court for the District of Columbia. The motion was denied and the venue was changed to the U. S. District Court for the Northern District of Illinois, Eastern Division, for further resolution.

## II.

We need first discuss the constitutionality of the procedures challenged by plaintiff, for if they are not valid it is clearly irrelevant whether there was compliance by the I.R.S.

■ The leading cases on the right to pre-termination and termination hearings are Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and its companion, Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). These cases hold that the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth (here, the Fifth) Amendment's protection of liberty and property. Therefore, we must initially determine whether plaintiff has a "protected" interest in his job.

■ Plaintiff does not maintain that his termination deprives him of any "liberty", and an independent evaluation by this court corroborates that judgment. There is no indication in the pleadings, exhibits, and briefs, that the plaintiff's interest in his good name, reputation, honor, or integrity is at stake. Board of Regents v. Roth, *supra.* And it stretches the concept of liberty too far to suggest that a person is deprived of liberty when he simply is not rehired in one job but remains as free as before to seek another. *Id.*

■ Nor do we believe that plaintiff has a property interest in his job. *Roth* says that "Property interests, of course, are not created by the Constitution.

Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709.

Here, the express terms of plaintiff's employment are set forth in 5 CFR § 315.801 et seq., which explains that when the first year of a given job is probationary, the employee may be terminated from service if he fails to demonstrate fully his qualifications for continued employment. The terms do not discuss re-employment, or renewal of service, and no explicit regulation exists which could give grounds for a claim of entitlement to re-employment.

Plaintiff argues that his property interest emanates from the promulgated regulations which establish a standard for determining the termination of employees during the probationary period. While it is true that Chapter 315, Subchapters 8–4(a) and (b) of the FPM provide that a probationer may be terminated for reasons of performance, "lack of aptitude or cooperativeness, or undesirable suitability characteristics evidenced by activities either during or outside official working hours", such cannot be read to supersede the terms which are the essence of probationary status. According to plaintiff's interpretation, the Government would be more fully protected if probationary jobs automatically ended after one year, with a Government option to continue them. Certainly the Government should be no less well-off for setting protective standards for the span of the trial period. If the result of setting standards is to give probationers an expectancy of re-employment tantamount to a protected property interest which requires a termination hearing, then there would be no termination distinction between probation appointments and tenured appointments. This result cannot be correct, and we conclude that plaintiff has no property interest in his job.

### III.

We have now to discuss whether plaintiff has been denied his Fifth Amendment rights by the alleged failure of defendants to comply with the procedures we have just held constitutionally sound.

Clearly the "letter of the law" was not followed as regards compliance with Chapter 315, Subchapter 8–3(a)(5) of the FPM, which provides that between the ninth and tenth month of employment the supervisor must make a recommendation to a deciding official covering future employment with the agency. A second procedural deficiency resulted from the failure of plaintiff to receive 15 days, rather than 14 days, advance notice of termination. Section 1882.4(2), Internal Revenue Manual.

Plaintiff argues that there was not substantial compliance with the regulations, but that even if there were substantial compliance, such would not suffice to afford due process; he relies upon the following passage from Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) (discharge of employee from Dept. of Interior in non-sensitive position, for security reasons):

> An executive agency must be rigorously held to the standards by which it professes its action to be judged. . . . Accordingly, if dismissal from employment is based on a defined procedure, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed. See Service v. Dulles, 354 U.S. 363 [77 S.Ct. 1152, 1 L.Ed.2d 1403] . . . . He that takes the procedural sword shall parish with that sword. 359 U.S. at 546, 79 S.Ct. at 976 (Frankfurter, J., concurring in part and dissenting in part).

This need for scrupulous observance, however, becomes more understandable as explained in Justice Harlan's opinion of the Court:

> For in proceedings of this nature, in which the ordinary rules of evidence do not apply, in which matters involving the disclosure of confidential information are withheld, and where it must be recognized that counsel is under practical constraints in the making of objections and in the tactical handling of this case which would not obtain in a cause being tried in a court of law before trained judges, scrupulous observance of departmental procedural safeguards is clearly of particular importance. 359 U.S. at 540, 79 S.Ct. at 973.

And it is interesting to note that in the narrow holding of the case, the Court says:

> Because the proceedings attendant upon petitioner's dismissal from government service on grounds of national security *fell substantially short of the requirements of the applicable department regulations*, we hold that such dismissal was illegal and of no effect. 359 U.S. at 545, 79 S.Ct. at 975. (emphasis added).

█ The case at bar is quite different from *Vitarelli*; the regulations in this case are not primarily procedural safeguards which inure to the benefit of plaintiff, but are instead provisions intended to provide information sufficient to allow the appointing officer to evaluate whether a probationary employee should or should not be retained. As defendants argue, this is clear in part from the absence of a requirement that the employee be provided with a copy of the appraisal, and from the fact that the subchapter requires an evaluation of each employee whether or not he will be retained.

This being the case, we are guided by the Supreme Court opinion of American Farm Lines v. Black Ball, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970) (dealing with the temporary operating authority of the ICC).

> We agree with the Commission that the rules were promulgated for the purpose of providing the "necessary information" for the Commission "to reach an informed and equitable deci-

sion" on temporary authority applications. . . . The rules were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion as in Vitarelli v. Seaton, 359 U.S. 535 [79 S.Ct. 968, 3 L. Ed.2d 1012] . . . . Thus there is no reason to exempt this case from the general principle that "[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party." [citations omitted] 397 U.S. at 538, 539, 90 S.Ct. at 1292.

Therefore, defendants have only to show that there was substantial compliance with the regulations, and that any deviation from the exact letter of the requirements caused no prejudice.

■ The procedural error based on Section 1882.4(2), Internal Revenue Manual, is that plaintiff was given fourteen days advance notice rather than fifteen days; this is certainly substantial compliance. This is particularly true since the section requires only that a probationary employee "should be given" fifteen days' advance notice "except that the appointing officer may establish a lesser period if circumstances warrant such action."

■ The other procedural error relates to plaintiff's probationary appraisal as required by Chapter 315, Subchapter 8-3(a) of the FPM, and § 0430.36 of the IRM. Though the appraisal was not made by Mr. Barrie, plaintiff's immediate supervisor, the appointing officer was provided with the information necessary to made a careful and meaningful evaluation of plaintiff's work. Since Mr. Barrie had only been plaintiff's supervising officer for one week after plaintiff was transferred back to the stabilization program from having been

detailed to the collection and taxpayer service division, the court believes it was clearly more fair to plaintiff to evaluate him on the current monitor's report, which contained two full single-spaced pages of evaluation supported by five pages of analysis of plaintiff's responses to specific telephone inquiries. Under the circumstances, this appears to be a fair and accurate method of obtaining an evaluation, and we reject any contention that plaintiff was prejudiced thereby.

In sum, we find that Mr. Krukar had no constitutionally protected interest in his job as a probationary employee, that the relevant termination regulations are valid, and were substantially complied with causing no prejudice to plaintiff. There are no issues of material fact, and defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment is granted, and an appropriate order shall enter.