George W. ENDICOTT, Plaintiff,

v.

A. M. HUDDLESTON, Henry Schnaare, Donald R. Miller, and Byron Connell, Defendants.

Civ. No. 76–4036.

United States District Court, S. D. Illinois.

Dec. 17, 1979.

Judgment affirmed Aug. 14, 1980.

James R. Drake, Springfield, Ill., for plaintiff.

Richard O. Hart, Paul M. Caldwell, Benton, Ill., for defendants.

## MEMORANDUM, ORDER AND JUDGMENT

JUERGENS, Senior District Judge.

Plaintiff George W. Endicott filed his complaint against A. M. Huddleston, Henry Schnaare, Donald R. Miller and Byron Connell, "... both as individuals and as members of and attorney for the Board of County Commissioners," alleging violation of plaintiff's right of free speech, expression and association under the First and Fourteenth Amendment to the United States Constitution and alleging violation of 42 U.S.C. Sections 1983, 1985, 1986 and 1988.

Plaintiff further alleges that the acts deprived him of a property right or interest by "removing him from his employment without due process of law," in violation of the Fourteenth Amendment to the United States Constitution, and in violation of 42 U.S.C. Sections 1983, 1985, 1986 and 1988.

The plaintiff also alleges that a conspiracy existed between the defendants to carry out the above stated violations.

The plaintiff claims compensatory damages, punitive damages, costs of suit, and reasonable attorney fees.

The Court has jurisdiction of the parties and of the subject matter.

Pursuant to the provisions of Section 484a, Chapter 120, Illinois Revised Statutes (1969), plaintiff was appointed Supervisor of Assessments of Pulaski County, Illinois, on the 1st day of October, 1970, for a four-year term.

Section 484a, Chapter 120, as stated, provides in pertinent parts as follows:

"... If the county board does not intend to reappoint an incumbent, it shall so notify him not more than 120 days nor less than 90 days before the expiration of his term. Upon request of the incumbent, the county board shall grant him a public hearing on the question of why he is not to be reappointed."

The County Board did not intend to reappoint plaintiff, and plaintiff was given the notice with the reasons for nonreappointment within the statutory time limit. He was not, at that time, given a meaningful hearing within the definition of "public hearing" as provided by statute, as interpreted by the Appellate Court of Illinois (Fifth District) in *People, etc. v. Huddleston, et al.*, 34 Ill.App.3d 799, 340 N.E.2d 662. That Court remanded "for proceedings not inconsistent with this opinion."

The Illinois Appellate Court determined that "The term 'public hearing' has consistently been held to require that the hearing include the right to appear and give evidence and also the right to hear and examine witnesses whose testimony is presented by opposing parties."

Following receipt of the opinion of the Illinois Appellate Court, the Board of County Commissioners of Pulaski County granted plaintiff a "meaningful" public hearing in accordance with the statute. It set the date and gave notice to plaintiff of the time and place of hearing. Plaintiff appeared with his counsel at the public hearing as reflected by the transcript (Tr. p. 4) of the hearing, which transcript was admitted into evidence as Plaintiff's Exhibit No. 9.

Plaintiff testified that he was given a hearing on August 16, 1977, as to why he was not reappointed. He testified that at this (August 16, 1977) hearing his attorney made a statement in his behalf, that he testified and was permitted to call witnesses, but didn't call anyone. Apparently he was satisfied with the public hearing granted to him as no further action was taken.

On May 7, 1976, plaintiff filed his complaint against the defendants, followed by his first amended complaint and then by his second amended complaint. This second amended complaint proceeded to trial.

He complains of (1) damages to his reputation; (2) violation of his right of free speech, expression and association under the First and Fourteenth Amendments to the United States Constitution; (3) violation of 42 U.S.C. Sections 1983, 1985, 1986 and 1988; (4) deprivation of his property right or interest by removing him from his employment without due process of law in violation of the Fourteenth Amendment to the United States Constitution and in viola-

tion of 42 U.S.C. Sections 1983, 1985, 1986 and 1988; and (5) a conspiracy by defendants to injure and damage plaintiff.

### Public Hearing Testimony

The transcript of the public hearing on August 16, 1977 (Plaintiff's Exhibit 9), reflects that plaintiff's counsel, Mr. Richard Kruger, in his opening statement said (P.Ex. 9, p. 5–6):

"... It is Mr. Endicott's position that in presenting these four points the public–the requirement that he have a hearing on the question of why he was not reappointed will be satisfied. ..."

Mr. Kruger further stated that he had only one witness–Mr. Endicott; that he would cover basically four areas through this testimony. Mr. Endicott, to a question propounded by his attorney:

"Q. Mr. Endicott, (P.Ex. 9, p. 28) the reason why you were not reappointed Supervisor of Assessments, what is your opinion as to the reasons why you were not reappointed Supervisor of Assessments?"

answered:

"A. I prefer not to answer. (P.Ex. 9, p. 29) The words I'll have to use–it was not exactly a misunderstanding of the Board and I but rather the State's Attorney and the way the property would be assessed in the county, which my idea was each and everybody exactly alike and this was not what had been followed in the past and apparently was not the wishes of the powers to be at that time."

An argument over the use of a recorder ensued (p. 31 Tr.). An argument of plaintiff's presence at a Board of Review meeting after a taxpayer requested that he (plaintiff) leave the room took place (P.Ex. 9, p. 32, 33). There was conflict between plaintiff and the State's Attorney (P.Ex. 9, p. 39).

No other points, as such, appear to have been raised.

According to plaintiff's testimony it was he who presented to the Board the plan to join with Alexander County into a multi-

county Supervisor of Assessments so as to save expense for both counties. A multi–county plan was formed, but that was a multi–county plan involving Pulaski and Massac Counties.

Again Mr. Kruger:

"Q. Now there is also a statement made here in point ten with regard to a joint county or multi–county Supervisor of Assessments. In your opinion, Mr. Endicott, was this one of the reasons why you were not reappointed as Supervisor of Assessments? (P.Ex. 9, p. 50).

"A. It's hard to figure out because I presented the plan to them before this all come about to join with Alexander County, in that when we wound up it would cost Pulaski five hundred dollars, Alexander County five hundred dollars net each per year for my travel and my service as Supervisor of Assessments in each county. I think the figures–here I have them here if you want them, but I think it's not necessary to give them ... It's a whole lot more than that now. And that was approved by the State subject to the approval of the two counties here." (P.Ex. 9, p. 50) (See also Trial Transcript. p. 179 & 180).

### Trial Testimony

The plaintiff was employed by the County Board of Commissioners of Pulaski County, Illinois, for a fixed one four–year term as Supervisor of Assessments of Pulaski County. According to the Statute of the State of Illinois, Chapter 120, Section 484a, he was not automatically entitled to reappointment if the commissioners chose not to appoint him. He did have the right to "a public hearing on the question of why he is not to be reappointed."

The Board was required to notify him "not more than 120 days nor less than 90 days before the expiration of his term" and he was entitled to "a public hearing on the question of why he is not to be reappointed." If the provisions of the statute were complied with, as they ultimately were, the plaintiff was entitled to nothing beyond the one four–year appointment.

During the one four–year appointment the plaintiff was entitled to and did have protection in that he served the full term for which he was appointed.

Eleven reasons were assigned for non–reappointment. Reason ten reads as follows: "10. That the County Board of Pulaski County decided to avail itself of the 'Multi–County' provision of the Statutes with regard to the office of Supervisor of Assessments, by combining with another County and securing additional funds from the State for the operations of the Office of Supervisor of Assessments."

Plaintiff takes credit for suggesting the multi–county plan for Supervisor of Assessments and the disappointment came when he did not receive the appointment (supra).

In this Court's opinion this entire incident was the result of a clash of personality and philosophy (Trial Transcript p. 171). The plaintiff was trying to dictate and impose his ideas on the County Board of Commissioners. The County Board of Commissioners, charged by law with administering the affairs of the County, was determined that plaintiff was not going to dictate. Had the Commissioners permitted plaintiff to dictate to them in the administration of their duties, they would have been guilty of abrogating the duties and obligations as the duly elected officials of the County.

The plaintiff charges the defendants with conspiracy. The Court is unable to see even a scintilla of evidence of conspiracy. This Court is ever mindful of the statement by Mr. Justice Oliver Wendell Holmes to the effect that an overt act of a conspiracy can be as simple as a man crossing a street. But, of course, there must be some meaningful connection between crossing the street and the furtherance of the conspiracy.

In his prayer for damages plaintiff asks for compensatory damages and "For punitive damages for the deliberate nature of the wrongs inflicted by defendants." The trial testimony is devoid of any showing of compensatory damage and no showing of any conspiracy or willfulness, ill–will, maliciousness, vindictiveness, hatefulness or viciousness, which would support a verdict for either compensatory or punitive damages.

The complaint attacks both in substance and procedure the violation of plaintiff's freedom of speech, expression and association and the deprivation of plaintiff's property right or interest in by removing him from his employment without due process of law.

The non–renewal of the plaintiff's one four–year term as Supervisor of Assessments of Pulaski County may not be predicated on his exercise of the First and Fourteenth Amendment rights. He must show that the decision not to reappoint was in retaliation for his exercising his right to free speech. This plaintiff did not show.

In *Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, the Supreme Court held that unless plaintiff can show that the decision not to re–hire him (school teacher) somehow deprived him of an interest in "liberty" or that he had a "property" interest in continued employment–"no hearing necessary." Here a hearing was required if requested. Request was made and a hearing was granted. But there is no testimony of, nor does the Court find any, deprivation of free speech, liberty or property interests.

The mere showing that plaintiff was not rehired in one particular job, without more, did not amount to a showing of loss of property.

"Property" denotes a broad range of interests that are secured by "existing rules or understanding." A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim to entitlement to the benefit. *Roth*, supra.

In this case the plaintiff invokes the provision of the statute and tries to justify his legitimate claim to entitlement to continued employment absent "sufficient cause." Plaintiff goes beyond the provisions of the statute and beyond the provisions for due process in both substance and procedure in trying to bolster his case.

A mere subjective "expectancy" is not protected by procedural due process. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570.

Property interests according to *Roth*, supra, are not created by the Constitution. They are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Plaintiff has not shown by any evidence his entitlement to reappointment.

There is no provision of law that would entitle plaintiff to automatic reappointment; there is no hint, intimation, clue, understanding, either actual or implied, agreement or dealing of any kind, as shown by the evidence, that gives plaintiff the right to be reappointed or that misled him in any way to believe that he would be reappointed or that made him change his mode of living or mode of future employment should he not be reappointed, nor is there any regulation of any kind which would bar the plaintiff from all other public employment of any kind if he were not reappointed, nor is there any stigma attached for non–reappointment.

■ To have a protected "property" interest plaintiff must have more than a unilateral desire or expectation of a benefit and more than an abstract need or wish for reappointment. He must have a legitimate claim of entitlement to it. *Roth*, supra.

Even though late, the hearing, when granted, provided procedural due process. The lateness of the hearing did not mean that plaintiff was entitled to reappointment. Reappointment was at the discretion of the County Board of Commissioners of Pulaski County and they chose to exercise that discretion against reappointment.

■ The term of the plaintiff's employment secured no interest in reemployment for the next four year term when the statutory notice with reasons and a hearing were provided. The statute does not place a time limit for the hearing.

The appointment for a four–year term as Supervisor of Assessments of Pulaski County supported no possible claim of entitlement to reemployment if notice and hearing had.

There is no other statute that secured his interest in reemployment or that created any legitimate claim to it.

The plaintiff presumably had an abstract concern in being reemployed, but he did not have a property interest sufficient to require the County Board of Commissioners to do more than the statute required or more than they did.

The plaintiff has not shown that he was deprived of liberty or property protected by the Fourteenth Amendment.

Defendants have filed their combined Motion to Amend Judgment; for Judgment Notwithstanding the Verdict and in the alternative for a "Judgment Notwithstanding the Verdict asking for a New Trial." This combined motion is now before the Court for consideration.

■ The Motion for Judgment Notwithstanding the Verdict raises a question of law only. *Marsh v. Illinois Central Railroad Co.*, 5th Cir., 175 F.2d 498. The motion is filed under Rule 50, Title 28, U.S.C.A., and the question is whether there is any evidence which, if believed, would authorize a verdict against the defendants. The trial court in considering this motion does not exercise any discretion, but makes a ruling of law, which, if in error, may be reversed by the court of appeals. As the plaintiff has the verdict of the jury, he is entitled to have the evidence read in the light most advantageous to him, all conflicts therein being resolved in his favor, and he must be given the benefit of every fact and inference which may reasonably be deduced from the evidence. *Baltimore & Ohio Railroad Co. v. Muldoon*, 3rd Cir., 102 F.2d 151.

This case was tried to a jury which returned a verdict against all the defendants.

The Court has reviewed the transcript of the evidence of the trial, reviewed its notes taken during the course of the trial, and

reviewed the exhibits. The Court has briefly recited the evidence presented by the plaintiff to establish his alleged violation of constitutional rights as to free speech and liberty and property rights and finds no evidence to support the verdict.

Therefore, the Court finds:

That there is no evidence which supports the verdicts against these defendants.

The Court, therefore, concludes as a matter of law that the plaintiff has failed to prove by any testimony, violation of his constitutional rights which would authorize or support the verdicts against these defendants.

IT IS, THEREFORE, THE ORDER of This Court that the defendants' Motion for Judgment Notwithstanding the Verdicts be and the same is hereby allowed, and the verdicts are set aside and the answers to special interrogatories set aside and held for naught and that the plaintiff take nothing in this suit.

The motion for new trial is entirely different and distinct from a motion for judgment notwithstanding the verdict and is governed by different principles. It is addressed to the discretion of the trial court. *Magee v. General Motors*, 3rd Cir., 213 F.2d 899. On such a motion consideration should be given as to whether the verdicts were contrary to the weight of the credible evidence. The Court holds if the above judgment notwithstanding the verdict is hereafter vacated or reversed, then the defendants should be and they are hereby granted a new trial for the reason that testimony is lacking as to both compensatory and punitive damages.

IT IS, THEREFORE, THE JUDGMENT of this Court that the verdicts of the jury in favor of the plaintiff, both as to compensatory and punitive damages, be and they are hereby set aside and judgment notwithstanding the verdict is entered in favor of defendants A. M. Huddleston, Henry Schnaare, Donald R. Miller and Byron Connell and that plaintiff take nothing in his suit.

The answers to the interrogatories likewise are set aside.

IT IS THE FURTHER ORDER of this Court that if the granting of the N.O.V. is vacated or set aside by the Court of Appeals, then and in that case the defendants be granted a new trial.