437 A.2d 1257

**Margaret K. KRASIK, Appellant,**

v.

**DUQUESNE UNIVERSITY OF THE HOLY GHOST, A corporation, Henry J. McAnulty, and Ronald R. Davenport.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed Dec. 11, 1981.

166

Margaret K. Krasik, Pittsburgh, appellant, in pro per.

Frederick N. Egler, Pittsburgh, for Duquesne, appellee.

Daniel H. Shapira, Pittsburgh, for Davenport, appellee.

Before HESTER, BROSKY and VAN der VOORT, JJ.

VAN der VOORT, Judge:

The essential facts of this case were stipulated by the parties in a document filed with the lower court on August 9, 1979. According to the Stipulation, appellant Margaret K. Krasik entered into a one-year contract of employment with Duquesne University pursuant to a letter dated March 28, 1977.[1] The original letter was signed by the Dean of the Law School, Ronald R. Davenport, one of the appellees

1. The Stipulation of Facts and Documents states that the letter was executed on March 27, 1977; however, the letter is actually dated March 28, 1977.

herein. Appellant's employment was renewed the following year pursuant to a letter dated June 1, 1978. The first letter specified:

In accordance with the authority delegated by the Board of Directors and the President of Duquesne University, the following are the terms of your non-tenured Faculty Agreement. Effective July 1, 1977, your period of service in the Law School will be paid over a twelve month period, on a bi-weekly basis, from July through June. Your rank will be Assistant Professor of Law and you will hold the position of Librarian in the School of Law. Your salary will be $21,000 for your period of service.

The Standards of the American Bar Association for Legal Education and the Articles of Association of the Association of American Law Schools, applicable to law schools and law school faculties, shall be in effect and are incorporated by reference. Provisions from the current Duquesne University Faculty Handbook shall also be in effect and are incorporated by reference to the extent that such provisions are not in conflict with the previously mentioned Standards and Articles or this Faculty Agreement.

The term of this Agreement is for one year.

The second letter was identical, except that appellant's salary was raised to $22,500. Appellant's initial employment was approved by the assembled body of the Duquesne University law faculty. The stipulated facts do not indicate whether or not the faculty voted on appellant's employment for the second year.

By letter dated December 15, 1978, Dean Davenport delivered to appellant written notice that her contract would not be renewed, and that her employment as head law librarian would terminate on June 30, 1979. The letter stated:

Dear Mrs. Krasik:

Over the past year and a half, I have had the occasion to review your work as Head Law Librarian with both you personally and with our colleagues. When you were hired, I was very optimistic that you could provide the profes-

sional leadership sorely needed in our Library. Unfortunately, that has not turned out to be the case. You are well aware of the many problems of a personal nature that you have had with various members of the Law School staff. In general, however, I have been disappointed in your lack of imagination and creativity as it reflects on the Library. In times past you have summarily dismissed contribution opportunities to our Library, thereby giving the impression of insensitivity to the possible donor. I have been particularly disappointed with your extreme sensitivity in your relationships with other members of the Law School community. Your overall attitude has severely hampered the growth and development of our Law Library.

Consequently, I have no choice but to give you official notice this date that your contract will not be renewed. You will, therefore, terminate your services as Head Law Librarian effective June 30, 1979.

> Yours very truly,
> Ronald R. Davenport
> Dean

The Law School Faculty at no time specifically authorized the execution and delivery of the letter dated December 15, 1978. At a meeting of the Faculty held on January 12, 1979, with appellant and Dean Davenport present, the Dean's action was discussed and the following motion carried:

MOVED, since all changes in the status of faculty members, including hiring, retention, termination, promotion and granting of tenure, are within the jurisdiction of the faculty, the Dean's action by his letter of December 15, 1978, in which he notified Professor Krasik of the non-renewal of her contract and termination of her services is null and void.

On March 5, 1979, appellant filed a grievance with the Duquesne University Grievance Committee. On April 5, 1979, she filed separate grievances with the American Bar Association (ABA) Accreditation Committee and with the

Association of American Law Schools (AALS).[2] By letter dated May 22, 1979, addressed to Dean Davenport and to appellant, the American Bar Association advised that it was not proceeding with the complaint filed with it because it had been advised that the matter was being handled through Duquesne University's procedure for individual grievances. On May 24, 1979, the Grievance Committee submitted to Father McAnulty, President of Duquesne University, a report of an ad hoc committee recommending that appellant's employment be extended until action could be taken by the ABA and the AALS. (Under the grievance procedure, the committee's recommendation is not effective until approved by the University President). By letter of June 13, 1979, a representative of the AALS advised appellant that the AALS would not assume jurisdiction in her case since the Association had been informed by appellant that she was preparing to commence litigation against the University. By letter dated June 28, 1978, addressed to the chairman of the University Grievance Committee, with copies to appellant and Dean Davenport, Father McAnulty rejected the grievance, concluding that Dean Davenport's termination of appellant's employment was within his administrative authority. The letter also stated that appellant's employment would terminate on June 30, 1979.

Appellant filed a complaint in equity on June 25, 1979, seeking to enjoin Duquesne University from terminating her employment with the University as assistant professor of law and law librarian. On July 16, 1979, appellees filed preliminary objections requesting dismissal of the suit. Appellant responded with preliminary objections to the preliminary objections. On August 8, 1979, the lower court granted appellees' preliminary objections and dismissed the complaint, noting that the contract of employment, by its own terms, expired on June 30, 1979, and that appellant therefore had no contract or property right which might be protected by the court. Appeal was then taken to our court from the Order dismissing the complaint.

2. On June 13, 1979, appellant also filed a charge of improper sex discrimination with the Equal Employment Opportunity Commission.

Appellant argues that the lower court erred in finding that her contract of employment had expired by its own terms and that she therefore had no right to continued employment. Appellant argues that her employment contract incorporated the standards of the AALS and the ABA, and that these standards required faculty approval before her employment could terminate. We find no merit to this argument.

■ Both employment letters incorporate by reference the ABA Standards and the AALS "Articles of Association" (AALS Bylaws).[3] Section 6–1 of the AALS Bylaws provides:[4]

To the end that high standards of legal education be fostered, each member school shall maintain:

.    .    .    .    .

4. A faculty of high competence and suitable size, vested with primary responsibility for determining institutional policies.

### APPROVED ASSOCIATION POLICY

.    .    .    .    .

**3.** The employment letters incorporate the "Articles of Association" of the AALS; the 1978 copy of the Association Information booklet included with the reproduced record indicates that the AALS has "Articles of Incorporation" and "Bylaws", but the booklet does not mention "Articles of Association". It is not entirely clear then what was being incorporated by the employment letters. Since appellant quoted from the Bylaws in her complaint and included a copy of the Bylaws with the reproduced record, and since appellees attached to their preliminary objections a copy of these same Bylaws, we assume that the parties are in agreement that "Articles of Association" in the employment letters refers to these Bylaws.

**4.** The complaint quotes from the February 1978 pamphlet titled "Association Information", and appellant has included with the reproduced record a copy of the Bylaws from the 1978 pamphlet. Appellees attached to their preliminary objections a copy of the Bylaws, also from the 1978 pamphlet. Although the official record contains an April 1979 copy of the "Association Information" with a slightly different version of the Bylaws, the 1978 Bylaws were evidently in effect at the time the dean notified appellant that her contract would not be renewed, and we therefore apply the 1978 Bylaws.

As to personnel matters, *experience in the law school world has shown that a competent faculty is best assured by the faculty's exercising a substantial degree of control over decanal and faculty appointments or changes in faculty status* (such as . . . renewal or termination of term appointments). *The capacity to make the pertinent decisions is maintained by procedures under which:*

i. The faculty . . . assembled in a meeting of which suitable notice has been given, makes the initial choice with respect to faculty appointments or changes in faculty status, for submission through any intermediate approving authorities to the final appointing authority;

.   .   .   .   .

iii. Except in rare cases and for compelling reasons, no decanal or faculty appointment or change in faculty status will be made over the expressed opposition of the faculty . . . .

.   .   .   .   .

8. A library adequate for the curriculum and for research.

### APPROVED ASSOCIATION POLICY

.   .   .   .

(c) Librarian and staff. A member school should have a full-time librarian and staff . . . . The librarian should be a full, participating member of the faculty. (Emphasis added).

We see nothing in these Bylaws which confers upon appellant any right to continued employment. These portions of the Bylaws simply outline the means by which a member school might assure itself of having a competent faculty. Should the AALS determine that Duquesne failed to comply with AALS Bylaws, and that such failure resulted in a faculty that was not competent, it might wish to take some action against the University. We find no merit, however, to appellant's argument that these Bylaws *required* that faculty approval be obtained before appellant's employment could terminate.

■ Similarly, we find nothing in Sections 205 or 604 of the ABA Standards which would require faculty action before appellant's employment could terminate. Section 205 of the ABA Standards states: "Within those general policies [which the law school's Governing Board may establish], the dean and the faculty of the law school shall have the responsibility for formulating and administering the program of the school, including such matters as faculty selection, retention, promotion and tenure . . . ." Certainly there is nothing in this section which requires the result which appellant would have us reach. Section 604 states: "The selection and retention of the law librarian shall be by the dean and faculty of the law school." Although this section obviously delegates the responsibility of selecting a law librarian to both the dean and faculty, we will not interpret this section to mean that appellant's contract cannot expire by its own terms without some action by both the dean and the faculty.

Reading the employment contract as a whole, *N. D. Ivey Co. v. Franklin Associates, Inc.*, 370 Pa. 225, 231, 87 A.2d 236 (1952), including the ABA standards and the AALS Bylaws which were incorporated by reference, it seems clear that appellant was employed pursuant to a one-year contract which expired on a specified date. The ABA Standards and AALS Bylaws do not convert the agreement into a contract for permanent employment, nor do the Standards or Bylaws require faculty review prior to the expiration of the term of the agreement. Had the letter of June 1, 1978 not specifically stated that the term of the agreement was to be for one year, or had the dean attempted to fire appellant prior to the expiration of the term, appellant would have had a stronger argument. As matters stand, we will not interpret the vague advisory language of the Standards and Bylaws to effect a result contrary to a clause in the agreement which clearly states that the term shall be for one year.

■ Appellant also argues that the lower court erred in refusing to strike appellees' preliminary objections, since these preliminary objections purportedly "improperly at-

tempted to serve the purpose of an answer, and raised matters not of record and attempted to vary the contents of the complaint and Krasik's contract." Appellant's arguments concerning the purported attempt by appellees to "vary the contents" of the complaint and contract are, for the most part, trivial. Although appellant is correct in stating that appellees' preliminary objections contain improper matter, our review of the lower court's opinion convinces us that the lower court's ruling was based upon matter properly before it. The lower court found that appellant's employment contract, by its own terms, expired on June 30, 1979, and that appellant had no contract or property right which was enforceable by the court.[5] As previously noted, we are in agreement with this decision.

Order affirmed.

---

**5.** Appellant does not appear to be claiming a right to continued employment based on anything other than her employment contract. *See Travis v. Teter*, 370 Pa. 326, 87 A.2d 177 (1952), and *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), on lack of property interest in absence of statute or contract. See also *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1970), involving a de facto tenure system.