[Civ. No. 26151. Fourth Dist., Div. One. Jan. 18, 1982.]

DANIEL ADELSON, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

COUNSEL

Sinclair & Clancy and Andrew Thomas Sinclair for Plaintiff and Appellant.

Donald L. Reidhaar, Milton H. Gordon and Fred Takemiya for Defendants and Respondents.

OPINION

**BROWN (Gerald), P. J.**—Daniel Adelson appeals a judgment denying his petition for a writ of mandate against the Regents of the University of California.

In 1960 the university hired Adelson as a part-time psychology lecturer in the school of nursing (School) at the university's San Francisco campus. In 1965 Adelson began working full time in the School's graduate training program in community mental health nursing. The program was funded by a grant from the National Institute of Mental Health (NIMH). In 1966 Adelson became the program's director at the dean's request after the dean told him in writing: "for whatever time you wish to be continued on the Community Mental Health Project, your salary will be funded through that project."

In 1967 Adelson was appointed associate professor of psychology in residence. In 1969 the university made "in residence" employees members of the academic senate with the right to a hearing by an academic senate committee "on any matter relating to personal, departmental, or University welfare." (Standing orders of the Regents, §§ 103.2; 105.1.)

In 1969 the NIMH renewed the School's grant for five years. In 1972 the School decided to change its curriculum and applied for an "umbrella" grant for its graduate psychiatric nursing training program. Beginning in July 1974, the community mental health grant and three other grants were consolidated into this "umbrella" grant.

The School terminated Adelson's appointment effective June 30, 1974, after determining his services were not needed under the revised curriculum. Adelson appealed to the San Francisco campus Committee on Privilege and Tenure, contending the School's "new program was in essence a continuation of the old one" and the umbrella grant should support his faculty position.

The committee held an evidentiary hearing on January 13, 1975; Adelson and the School were represented by counsel at the hearing. The five-member committee unanimously found: "There is widespread acceptance of the old AAUP principle that after a probationary period teachers and investigators should be terminated only for adequate cause or financial exigency.... [F]airness demands, and in our experience on the campus practice provides, that faculty members in 'soft money' positions of long duration and associate professor or professor rank should not be terminated except for adequate cause as long as the extramural funds for their project continue." The committee concluded: "Review of

the documents in the case and of the testimony at the hearing have failed to convince us that the change in the program has materially altered the appropriateness of Dr. Adelson to the program. The course content previously taught by him is still a part of the program. The new umbrella grant funds this teaching, as did the old grant for the community mental health nursing program. As an In Residence faculty member of many years' service, and of the rank of associate professor, Dr. Adelson is entitled to continuity of employment, except for sufficient cause, as long as the pertinent funds are available. The umbrella grant provides the pertinent funds, and no sufficient cause has been advanced for his termination." The committee recommended Adelson be reinstated and reimbursed for lost salary and benefits.

After receiving the committee's report, School Dean Marjorie Dunlap wrote San Francisco campus Chancellor Francis Sooy, asking him to reverse the committee's recommendation because it interfered with the faculty's right to set curriculum and the School did not have "pertinent and/or sufficient funds for Dr. Adelson." Dunlap did not send Adelson a copy of her letter.

Chancellor Sooy rejected the committee's recommendation. The chancellor told the committee: "[A]ccepting your recommendation would be an unwarranted interference with the rights of the faculty of the School of Nursing to determine its programmatic needs and curriculum priorities.... Accepting your conclusion as stated would amount to de facto recognition of tenure for a faculty member in the Residence series." The chancellor did not review the hearing transcript before rejecting the committee's recommendation.

Adelson appealed the chancellor's decision to university president David Saxon. In denying Adelson's request for reinstatement, Saxon said: "[W]ithout the prior approval of The Regents neither the Committee on Privilege and Tenure nor the Dean of the School of Nursing may extend security of employment or tenure to an employee, or to a class of employees, whose employment is otherwise terminable at will. I also agree with the Chancellor in finding no convincing evidence that the proposed programmatic changes were an abuse of discretion."

Adelson petitioned the superior court for a writ of mandate directing the university to set aside its decision dismissing him. The court denied Adelson's petition. Adelson appeals, contending the university should

reconsider its decision in light of the evidence properly before the hearing committee.

Adelson contends the chancellor erroneously concluded accepting the committee's recommendation would grant Adelson de facto tenure and interfere with the faculty's right to determine curriculum. In recommending Adelson's reinstatement, the committee did not question the faculty's right to set and revise its curriculum; rather the committee found the curriculum changes made by the faculty did not materially alter "the appropriateness of Dr. Adelson to the program." In making this finding the committee did not interfere with the faculty's curriculum rights. Similarly, the committee did not purport to grant Adelson tenure. Adelson did not seek tenure but rather claimed he was entitled to continued employment under campus practices and the dean's 1966 letter because the revised curriculum essentially continued the old program and funding for his position was available under the umbrella grant. (1) From the evidence presented at the hearing about the circumstances of Adelson's employment, the committee found the School improperly dismissed him. However, the committee made no finding Adelson had tenure. The chancellor mischaracterized the committee's findings.

Adelson contends the chancellor erred in disregarding the committee's findings without reviewing the evidence presented at the hearing. As an academic senate member, Adelson was entitled to have the committee decide after hearing whether the School's procedures in not reappointing him "were not in consonance with the applicable rules and requirements of the University or any of its Divisions." (Academic senate bylaw 113.) Adelson was entitled to the opportunity to prove he had the right to reappointment under the circumstances of his employment and the university's policies and practices. (See *Perry* v. *Sindermann* (1972) 408 U.S. 593, 602-603 [33 L.Ed.2d 570, 580, 92 S.Ct. 2694].) At the hearing Adelson properly challenged the sufficiency of the School's asserted ground for not reappointing him, the curriculum change. The committee found the evidence did not support the reason given for his termination because his courses' content was included in the revised curriculum. The committee also found a campus practice of not terminating "faculty members in 'soft money' positions of long duration and associate professor or professor rank . . . except for adequate cause as long as the extramural funds for their project continue." The

chancellor erred in ignoring these factual findings and concluding instead reappointing Adelson would violate university policy by granting him tenure and interfering with the faculty's right to set curriculum. After rejecting the committee's recommendation, the chancellor should have independently reviewed the hearing record to determine whether, under the evidence presented, the School could properly dismiss Adelson. (See *Allied Comp. Ins. Co.* v. *Ind. Acc. Com.* (1961) 57 Cal.2d 115, 119 [17 Cal.Rptr. 817, 367 P.2d 409].) However, here the university concedes the chancellor accepted the committee's factual findings and based his decision solely on legal grounds.

The university contends the chancellor properly rejected the committee's recommendation because, as a matter of law, a campus practice may not prevail over the Regents' regularly adopted and codified regulations about tenure. However, the university misstates the law in asserting Adelson's employment was terminable at will because he did not have tenure. In *Perry* v. *Sindermann, supra*, 408 U.S. 593, 602 [33 L.Ed.2d 570, 580], the court says: "A teacher . . . who has held his position for a number of years, might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure. . . . [T]here may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure." The committee could properly find the university's regulations were supplemented by campus practice and circumstances unique to Adelson's employment.

■ . Adelson meritoriously contends he·was prejudiced by Dean Dunlap's letter to Chancellor Sooy after the hearing urging him to reverse the committee's recommendation. Here the dean initiated Adelson's termination and testified at the hearing. Dissatisfied with the committee's recommendation, she tried to influence the chancellor's decision by telling him there were no funds available to pay Adelson and arguing the committee had interfered with the faculty's right to determine curriculum. The dean's ex parte communication with the chancellor was improper. Adelson had the right to have the chancellor make his decision based upon the evidence at the hearing. The dean's letter was not properly before the chancellor and could not be considered evidence.

The judgment is reversed. The case is remanded to the superior court with directions to grant a writ of mandate ordering the university to set

aside its decision as not supported by the committee's undisputed findings and to reconsider its decision in light of this opinion.

Wiener, J., and Milkes, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.