MARCUS, Justice.
After a hearing on an appeal by Super City Boxing Productions, Inc. from a decision of the State Athletic Commission dated September 4, 1981 denying it the right to promote a boxing contest in Orleans Parish on September 16, 1981 and on an application by Super City for a preliminary injunction, the trial judge set aside the decision of the Commission and ordered that Super City be designated as the “sole club” to promote a boxing contest in Orleans Parish on September 16, 1981 and enjoined the New Orleans Boxing Club and Pace Management Corporation from televising or showing the Leonard-Hearns championship fight on September 16,1981 in Orleans Parish. The judgment was signed on September 15, 1981.
The State Athletic Commission, New Orleans Boxing Club and Pace Management Corporation appealed. The court of appeal affirmed.[1] We granted the application of the State Athletic Commission and the joint application of the New Orleans Boxing Club and Pace Management Corporation to review the correctness of that decision.[2]
The record reveals the following facts. On June 25, 1981, it was announced nationwide that the Sugar Ray Leonard-Tommy *645 Hearns championship fight would take place at an unknown site on September 16, 1981. On June 26, 1981 (the next day), Eddie Sapir, a representative of Super City, testified that he and Jimmy Walsh[3] met with Lindsey J. Williams, chairman of the State Athletic Commission, in his (Sapir’s) office. The purpose of the meeting was to secure the date of September 16,1981 for a live championship bout. Williams gave Super City “tentative permission” to hold a live fight on that date. In addition, Sapir asked Anthony Marulla (another representative of Super City) “to see if he could get the Superdome on the 16th for a live world championship, either Sean O’Grady or Sal-vadore Sanchez.” Thereafter, Marulla met with Mike Levy of HMC Management Corporation [4] concerning the rental of the Su-perdome for September 16. However, Levy informed Marulla that a “hold” had been placed on the entire month of September by HMC for the purpose of presenting the live Leonard-Hearns fight or the closed circuit broadcast of said fight.
Subsequently, several events transpired. The proposed Sean O’Grady-Claude Noel championship fight was cancelled. The Leonard-Hearns live fight was awarded to Las Vegas, Nevada, combined with a closed circuit telecast to various states in this country and cities around the world. Pace Management Corporation purchased these closed circuit television rights for Louisiana and several other states. Pace then entered into a joint venture with Lou Messina of the New Orleans Boxing Club to televise the Leonard-Hearns fight on September 16, 1981 in the Superdome. This arrangement combined the promotional talents of Messi-na (a licensee) with the exclusive rights of Pace to televise the fight.[5] On August 25, 1981, Messina wrote Levy of HMC informing him of this arrangement. At about this time, tickets went on sale for the closed circuit telecast of the Leonard-Hearns fight through Pace even though there had not been any formal approval granted by the Commission. On August 27,1981, a written complaint was sent to the Commission by Super City concerning Pace’s selling of tickets.
In response to the complaint of Super City, the Commission held meetings on August 31 and September 2, 1981, but took no action. However, at a meeting on September 4, 1981, the Commission reprimanded Messina[6] and denied Super City “any further rights to the September 16 date on which to promote a professional boxing match.” This litigation ensued.
Since the Leonard-Hearns fight took place on September 16, 1981, the injunction restraining its telecast and the appeal from the Commission’s denial of the right of Super City to promote a fight on that day are most probably moot except for their possible effect on who gets the net proceeds of the gate, an issue which will ultimately have to be litigated.[7] Because of this, appellants urge that we do not recall the writs granted in this matter for mootness. Since our decision in this matter may give practical relief and because judicial economy dictates that we resolve this suit rather than have the same issues go through our court *646 system once again, we will address the merits of the issues before us.
The issues are whether the Commission’s denial of the right of Super City to promote a boxing match in Orleans Parish on September 16, 1981 after having received “tentative permission” from one of its Commissioners constitutes a deprivation of a property interest and, if not, whether the Commission nonetheless acted arbitrarily or capriciously or abused its discretion.
Appellants contend that the “tentative permission” orally given by Commissioner Williams to Super City on June 26, 1981 to hold a live fight on September 16, 1981 did not create a property interest in Super City. We agree.
In Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La.1980), we discussed the concept of a property interest:
The Fourteenth Amendment of the Federal Constitution provides, in part, “... nor shall any State deprive any person of life, liberty, or property, without due process of law.... ” Article 1, § 2 of our state Constitution provides: “No person shall be deprived of life, liberty, or property, except by due process of law.” As can be seen, the obvious, but sometimes overlooked, initial requirement in any due process claim is that the claimant show the existence of some property or liberty interest which has been adversely affected by state action. See e.g., Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
In Roth, supra, the United States Supreme Court held that in order to have a property interest, a person “must have more than a unilateral expectation.... He must, instead, have a legitimate claim of entitlement. ...” Stated another way, a person must have a legitimate expectation.
Perhaps, when Super City was given “tentative permission” from Williams on June 26, there was a unilateral expectation on the part of Super City to promote a live fight on September 16. However, it was clearly not a legitimate expectation. To understand why, we must examine the controlling law on the subject.
La.R.S. 4:66 provides:
§ 66. Professional boxing contracts; permits
A. Each club licensed to hold, conduct or give professional boxing contests or exhibitions shall furnish signed contracts to the commission as follows: (1) in the case of main event boxers, six days before the contest or exhibition; and (2) in the case of preliminary boxers, four days before the contest or exhibition. No such licensed promoting club, matchmaker, manager, boxer, or wrestler, may publicly announce or advertise that any bout or exhibition will take place unless such bout or exhibition has been formally approved by the commission. (Emphasis added.)
B. Each club affected by the provisions of this chapter shall secure permits from the commission prior to holding any contest or exhibition. The commission shall not grant more than two permits a week to any club, nor shall the commission grant permits to more than one club in the same parish for the same date.
C. The commission may revoke permits for violation of any of the provisions of this chapter.
Before a promoter can publicly announce or advertise his bout, the Commission must “formally approve” the bout. According to the testimony of Commissioners Williams and Mike Cusimano, a match is not approved by the Commission until the promoter has (1) a match, (2) an arena and (3) a date. In addition, the promoter must furnish “signed contracts” to the Commission six days before a main event contest which are separate and apart from the formal approval of the bout by the Commissioner.
In the instant case, Super City never received formal approval by the Commission. As of September 4, 1981 (just twelve days before the proposed bout), Super City did not have any boxers or an arena. Cusi-mano testified that the “O’Grady-Noel *647 match was an impossible match from the beginning. The match could not be made for New Orleans. As a matter of fact, O’Grady’s title was stripped from him by the courts and Noel boxed for the championship last Saturday [September 12].” Moreover, the Superdome was unavailable. In addition, there is no evidence that Super City attempted to get an alternate fight. From these facts, it is clear that Super City could not have had a legitimate expectation of promoting a fight merely because it had “tentative permission” of a certain date. Hence, the lower courts erred in holding that Super City had been deprived of a property interest as a result of the decision of the Commission.
The second issue is whether the Commission nonetheless acted arbitrarily or capriciously or abused its discretion.
La.R.S. 49:964(G) provides in pertinent part:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; ...
We consider it clear that the Commission’s decision was not arbitrary or capricious or an abuse of discretion. La.R.S. 4:64 provides in pertinent part:
Should any case occur which may not be covered in this chapter or by the rules and regulations of the commission, it shall be determined by the commission, but only insofar as such determination is consistent with justice, the best interests of boxing and with the powers and authority granted by this chapter. (Emphasis added.)
The Commission’s decision to deny a promoter a date is not covered in the Boxing and Wrestling chapter[8] or by the rules and regulations of the Commission; therefore, the Commission has the sole and full discretion to determine what is in the best interests of boxing.
Tentative permission was given to Super City on June 25, 1981, to promote a live fight on September 16, 1981. More than two months later and only twelve days before the proposed fight date, Super City did not have a match or an arena. Super City was granted a hearing before the Commission on three different occasions (August 31, September 2 and 4). The minutes from these meetings reveal that Super City would not be able to present, as originally planned, a live championship match between O’Grady and Noel. Nor was there any evidence that any boxing match was being planned for that date. Moreover, the Commission was in the position to secure what had been described as potentially the greatest match of the century, the Leonard-Hearns fight. Pursuant to La.R.S. 4:64, the Commission was required to act in the best interests of boxing. Hence, it denied Super City “any further rights to September 16th on which to promote a professional boxing match.” As previously stated, we do not consider this action was arbitrary or capricious or an abuse of discretion. The courts below erred in holding otherwise.
DECREE
For the reasons assigned, the judgment of the court of appeal affirming the judgment of the district court is reversed and set aside and the decision of the State Athletic Commission is reinstated.
LEMMON, J., concurs.
DENNIS, J., concurs with reasons.
WATSON, J., dissents, being of the opinion that the matter in moot.

. 411 So.2d 1098 (La.App. 4th Cir.1982).

. 415 So.2d 938 (La.1982).

. Walsh was a representative of Sean O’Grady who was the World Boxing Association lightweight champion.

. HMC was the operator of the Louisiana Su-perdome.

. Super City contends that the sole purpose of this arrangement was to permit the utilization of Messina’s license to circumvent the state’s statutory requirements for licensing. We do not agree. We find nothing in the statutory law of this state that prohibits such an arrangement between a licensee and a person with the exclusive right to televise the fight.

. Messina was warned that his future promotions would be carefully watched and any violation would be dealt with more severely.

. Super City’s brief to the court of appeal indicates that the parties entered into a “compromise agreement” allowing the telecast of the Leonard-Hearns fight on September 16, 1981 at the Superdome in New Orleans. This agreement stipulated that all profits earned by Pace would be placed in an escrow account pending resolution of this litigation. The profits amounted to $34,081.81. At oral argument before this court, the parties indicated that there was another lawsuit pending in the district court involving issues presented in this case.

. La.R.S. 4:61-85.