Waddie JUSINO, Aurea Irizarry, Jose M. Quiñones, Miriam Orengo, Ismael Ortiz, Myrta Figueroa, Silvia Velez, Hilda Velez, Jorge Vega, Maria Moreno, Miriam Correa, Luis F. Rodriguez, Anibal Esmurrias Hilda Melendez, Carlos Cintron, Zulma Ortiz Herminia Garcia, Lydia Garcia, Judith Morales, Edna Esclavon, Plaintiffs,

v.

Hon. Carmen SONIA ZAYAS, as Secretary of the Department of Social Services of the Commonwealth of Puerto Rico and in her personal capacity; Wilfredo Vega Garcia, as Regional Director of the Mayaguez Region of the Department of Social Services and in his personal capacity; his wife Mrs. Vega and their Conjugal Partnership; Martin A. Giron, as Regional Director of the Ponce Region of the Social Services' Department and in his personal capacity; his wife Mrs. Giron and their Conjugal Partnership; Luis N. Pastrana Torres, as Deputy Secretary for Personnel and Human Resources of the Department of Social Services and in his personal capacity; his wife Mrs. Pastrana and their Conjugal Partnership, Defendants.

Civ. No. 86-0797 (JP).

United States District Court,
D. Puerto Rico.

June 2, 1987.

Frank Rodríguez García, Ponce, P.R., for plaintiffs.

María L. Jiménez, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

OPINION AND ORDER

PIERAS, District Judge.

This is an action for injunctive relief and damages brought under 42 U.S.C. section 1983 and certain pendant state claims

where plaintiffs allege violation of their constitutional right to freedom of belief and association under both the United States and Puerto Rico Constitutions, violation of their constitutional right to due process of law, and violation of Puerto Rico employment discrimination law.

Defendants' motion for partial summary judgment on the basis of qualified immunity was granted as to plaintiffs' damage claim for deprivation of due process. Trial ensued with the jury examining the damage claim as to the alleged violation of plaintiffs' first amendment rights, and the Court examining whether equitable relief should issue.

Following a seven-day jury trial, a special verdict was returned. The jury found against defendants as to all plaintiffs and awarded compensatory damages for lost wages. No other compensatory or punitive damages were awarded by the jury.

Pending before the Court is plaintiffs' request for damages pursuant to Puerto Rican employment discrimination statutes. 29 L.P.R.A. §§ 136, 146(a)(1) (1985). Further pending is plaintiffs' claim for injunctive relief and attorneys' fees. We adjudge this claims seriatim.

## I. *Puerto Rico Civil Liability*

Section 136 of Title 29 of the Laws of Puerto Rico Annotated reads in part:

> Any employer who dismisses, suspends, refuses to reinstate in his job, demotes, reduces the pay, or increases the working hours of, or imposes or attempts to impose heavier working conditions on, any employee or ex-employee; or who in any way discriminates against him, or threatens to commit any such act, on the grounds of his affiliation with a particular political party, shall be civilly liable for a sum equal to double the amount of the damages he may have caused the said employee or ex-employee through such action ... The court may also direct the employer to reinstate the laborer in his employ, and to desist and cease from committing to act in question.

Section 146 of the same title also imposes double liability for discrimination in employment based on race, color, sex, social or national origin or social position, political or religious beliefs. 29 L.P.R.A. § 146 (1985). Plaintiff prayed for such relief as part of the pendant state claims to the action under 42 U.S.C. section 1983.

Plaintiffs averred that they were terminated because of their political affiliation. This single action would simultaneously offend federal civil rights law and Puerto Rico employment discrimination law, as well as the constitutions of both the United States and Puerto Rico. Clearly, both claims "derive from a common nucleus of operative fact." *United Mineworkers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). As such, the Court has the power to exercise pendent jurisdiction. *Id.* at 725, 86 S.Ct. at 1138.

Exercise of pendent jurisdiction is discretionary with the court. *Id.* at 726, 86 S.Ct. at 1139. "Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Id.* (citation omitted). The Court is hard pressed to imagine a situation where the goals of judicial economy, convenience, and fairness to the litigants are better served. In trying both the federal and the pendant state claims, the Court had to examine only one set of facts, the parties were not burdened with dual presentations of identical evidence, and the possibility of inconsistent verdicts between two trials was avoided. Accordingly, the Court exercises pendent jurisdiction over the Puerto Rican employment discrimination claims, and in keeping with the jury's and our findings that plaintiffs were discriminated against because of their political beliefs, we shall award damages under 29 L.P.R.A. sections 136 and 146.

## II. *Injunctive Relief*

The parties stipulated to the following concerning the twenty-two plaintiffs:

1. All of the plaintiffs were "transitory" employees, as that term is defined in Puerto Rico civil service law.

Persons appointed to positions of fixed duration shall have a transitory status. The duration of these appointments shall correspond to the period for which the position is created. Transitory appointments to permanent positions may be made as determined by regulations. The examinations for persons to be recruited for transitory appointments or for unskilled or semi-skilled positions shall consist of an evaluation for the sole purpose of determining if they meet the minimum requirements.

3 L.P.R.A. § 1333(12) (Supp.1985).

2. Plaintiffs were not afforded a pretermination hearing, nor was any cause cited for the nonrenewal of their appointments.

3. Plaintiffs Waddie Jusino was an Office Clerk I in the Nutritional Assistance Program (hereinafter PAN, after the Spanish acronym) in Lajas. When he was discharged on February 28, 1986, he had a monthly salary of $464.00. His original appointment was in June 1978 and he had received twelve consecutive reappointments prior to termination.

4. Plaintiff Aurea M. Irizarry Ramos was an Office Clerk III in the Children's Day Care Center in Cabo Rojo. When she was discharged on February 28, 1986, she had a monthly salary of $512.00. Her original appointment was in August 1984 and she had received two consecutive reappointments prior to termination.

5. Plaintiff José M. Quiñones Irizarry was an Office Clerk I for PAN in San Germán. When he was discharged on February 28, 1986, he had a monthly salary of $464.00. His original appointment was in September 1978 and he had received ten consecutive reappointments prior to termination.

6. Plaintiff Miriam Orengo Martínez was an Office Clerk I for PAN in Guánica. When she was discharged on February 28, 1986, she had a monthly salary of $464.00. Her original appointment was in August 1980 and she had received six consecutive reappointments prior to termination.

7. Plaintiff Ismael Ortíz Ortíz was an Office Clerk III in the Children's Day Care Center in Lajas. When he was discharged on February 28, 1986, he had a monthly salary of $532.00. His original appointment was in December 1981 and he had received six consecutive reappointments prior to termination.

8. Plaintiff Myrta Figueroa Seda was an Assistant Officer in the Children's Day Care Center in Cabo Rojo. When she was discharged on February 28, 1986, she had a monthly salary of $512.00. Her original appointment was in August 1984 and she received two consecutive reappointments prior to termination.

9. Plaintiff Sylvia Vélez Ortíz was an Office Clerk I for PAN in Hormigueros. When she was discharged on February 28, 1986, she had a monthly salary of $464.00. Her original appointment was in February 1978 and she received eleven consecutive reappointments prior to termination.

10. Plaintiff Hilda Vélez Ortíz was an Office Clerk I for PAN in Lajas. When she was discharged on February 28, 1986, she had a monthly salary of $464.00. This plaintiff was reinstated on April 7, 1986, and currently has an appointment set to expire on June 30, 1987. Her original appointment was in August 1980 and she received ten consecutive reappointments prior to termination.

11. Plaintiff Jorge L. Vega López was an Assistant in the Family Services Program in Lajas. When he was discharged on February 28, 1986, he had a monthly salary of $464.00. His original appointment was in October 1981 and he received five consecutive reappointments prior to termination.

12. Plaintiff María del C. Moreno Rivera was an Office Clerk I for PAN in San Germán. When she was discharged on February 28, 1986, she had a monthly salary of $464.00. Her original appointment was in September 1980 and she received six consecutive reappointments prior to termination.

13. Plaintiff Myriam Correa González was an Assistant II for the Home Counsel-

ing Service in Mayaguez. When she was discharged on February 28, 1986, she had a monthly salary of $464.00. Her original appointment was in January 1980 and she received seven consecutive reappointments prior to termination.

14. Plaintiff Luis F. Rodríguez Torres was a Worker I for the Geriatric Center in Juana Díaz. When he was discharged on February 28, 1986, he had a monthly salary of $442.00. His original appointment was in May 1983 and he received four consecutive reappointments prior to termination.

15. Plaintiff Aníbal Esmuria de Jesús was a Truck Driver I for the Geriatric Center in Juana Díaz. When he was discharged on February 28, 1986, he had a monthly salary of $506.00. His original appointment was in September 1982 and he received five consecutive reappointments prior to termination.

16. Plaintiff Carlos Cintrón Maldonado was Worker I for the Geriatric Center in Juana Díaz. When he was discharged on February 28, 1986, he had a monthly salary of $442.00. His original appointment was in March 1983 and he received four consecutive reappointments prior to termination.

17. Plaintiff Zulma M. Ortíz Torres was an Assistant for the Home Counseling Office in Juana Díaz. When she was discharged on February 28, 1986, she had a monthly salary of $519.00. Her original appointment was in November 1975 and she received eleven consecutive reappointments prior to termination.

18. Plaintiff Herminia García de Toro was a Worker I for the Geriatric Center in Juana Díaz. When she was discharged on February 28, 1986, she had a monthly salary of $442.00. Her original appointment was in January 1979 and she received seven consecutive reappointments prior to termination.

19. Plaintiff Lydia García Hernández was a Worker I for the Geriatric Center in Juana Díaz. When she was discharged on February 28, 1986, she had a monthly salary of $442.00. Her original appointment was in January 1979 and she received seven consecutive reappointments prior to termination.

20. Plaintiff Judith Morales García was a Worker I for the Geriatric Center in Juana Díaz. When she was discharged on February 28, 1986, she had a monthly salary of $442.00. Her original appointment was in March 1983 and she received four consecutive reappointments prior to termination.

21. Plaintiff Edna Esclavón Matías was the Director of the Children's Day Care Center in Añasco. When she was discharged on February 28, 1986, she had a monthly salary of $755.00. Her original appointment was in September 1982 and she received five consecutive reappointments prior to termination.

22. Plaintiff Gumersindo Lugo Horrach was an Office Clerk II for PAN in San Germán. When he was discharged on February 28, 1986, he had a monthly salary of $476.00. His original appointment was in January 1979 and he received ten consecutive reappointments prior to termination.

23. Plaintiff Sarah Torres Vargas was a Clerk Typist I for PAN in Lajas. When she was discharged on June 30, 1986, she had a monthly salary of $545.00. Her original appointment was in January 1977 and she received thirteen consecutive reappointments prior to termination.

24. Plaintiff José M. Martínez Vargas was Technician I for PAN in Lajas. When he was discharged on June 30, 1986, he had a monthly salary of $673.00. His original appointment was in January 1976 and he received fourteen consecutive reappointments prior to termination.

In addition to all of the above, plaintiffs presented testimony that each of them were publically and visibly members of the New Progressive Party (NPP). After the election, Carmen Sonia Zayas, a well-known operative within the Popular Democratic Party (PDP), was given charge of the Department of Social Services. Like any new administrator, she surrounded herself with trusted lieutenants—in this case, the other defendants. The evidence presented to the jury and the Court indicated that plaintiffs had been renewed over and over again while the NPP was in power. Nonrenewal

came only after the change in administration. The defense presented evidence that plaintiffs' appointments were not renewed and that no justification need be uttered for the termination. There was, however, no evidence before the jury and the Court that budgetary concerns or changes in the nature of services provided by plaintiffs' agency necessitated elimination of plaintiffs' positions. Evidence presented indicated that plaintiffs' jobs were being filled by temporary workers from the Right to Work Administration (hereinafter ADT, after the Spanish acronym). The jury concluded that more sinister purposes lay behind defendants' actions. In a special verdict, the jury specifically found that plaintiffs' political affiliation was the substantial and motivating reason for their termination. This Court, viewing the record as a whole, reaches the same conclusion.

The purpose behind defendants' conduct in this case was to demonstrate to the employees and those who seek assistance from the Department of Social Services that the power to hire, fire, manage, supervise and otherwise control employment resided in a particular political party rather than in a particular new administration. In order to accomplish such purpose, defendants had to discriminate against the plaintiffs because of their political belief and in so doing, defendants knowingly and intentionally harrassed and abused these employees in violation of plaintiffs' constitutional rights. This has been done by taking away their jobs and their meager incomes, and by telling the employees and the community that those not affiliated with the Popular Democratic Party are out of power and do not deserve and should not be given any respect. The message sent to the community in general was that they must cater to the politicians of the victorious party. All this was done with political gain as the only purpose in mind. As a result of being able to control the administration through such conduct, defendants intend to put themselves on a position to make new converts to their party, thus affecting the result of the 1988 election and perpetuating themselves in power.

The government established by the founders of our nation is a government run for the benefit of all the people, not for the purpose of perpetuating the political party in power. Executive officials who insist on violating the civil rights of government employees to replace them with their cronies only prove that they have put their desire to stay in power and in office ahead of all other considerations in a manner reminiscent of a "president-for-life" syndrome. These motives and actions contravene the constitutional mandate which aims for the continuity of democracy and, above all, the preservation of freedom.

The negative effects of patronage practice on the free and efficient functioning of our government has been vigorously noted by the highest courts of the United States and Puerto Rico. *E.g., Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Colón v. Corporación de Renovación Urbana y Vivienda,* 84 JTS 52 (P.R. 1984). The threat latent in conditioning public employment on partisan support is well expressed in *Elrod.* First, the practice exacts a ruthless toll on the individual employee's ability to act according to his beliefs and to associate with others of like political persuasion, thus diminishing support for his political party. *Id.* at 355–56, 96 S.Ct. at 2680–81. Secondly, the free functioning of the electoral process suffers because competing political interests are not supported. The Supreme Court aptly stated the problem:

> Conditioning public employment on partisan support prevents support of competing political interests. Existing employees are deterred from such support, as well as the multitude seeking jobs. As government employment, state or federal, becomes more pervasive, the greater the dependence on it becomes, and therefore the greater becomes the power to starve political opposition by commanding partisan support, financial and otherwise. Patronage thus tips the electoral process in favor of the incumbent party, and where the practice's scope is substantial relative to the size of the elector-

ate, the impact on the process can be significant.

*Id.* at 356, 96 S.Ct. at 2681.

■ The plaintiffs have suffered injury by this political discrimination. The jury attempted to make them whole by their award of lost wages. The injury, however, continues as long as plaintiffs continue unemployed because of defendants' political discrimination. The argument that any harm suffered by defendants would outweigh the injury that would continue to be suffered by plaintiffs is specious. Defendants adduced no evidence at trial that there were no funds available to employ plaintiffs. Whatever circumstantial evidence defendants presented concerning the lack of need for plaintiffs' services was apparently not believed by the jury and the Court similarly so finds. The public interest in those matters would likewise be served by plaintiffs' reinstatement, as the public is entitled to governmental services uninterrupted by the whimsy of political chieftains. The Court therefore finds that plaintiffs are entitled to reinstatement in their former positions and duties. The Court further concludes that defendants must cease and desist from political discrimination against plaintiffs.

■ As to plaintiffs' cause of action for violation of their procedural due process rights under the fourteenth amendment, the evidence is not so clear. Authority for removal of transitory employees is provided by 3 L.P.R.A. section 1336(9) (Supp. 1985). That section states that "[a]ny transitory employee may be removed from service at any time during the term of his appointment." This section, distinct from other sections of Puerto Rico civil service laws, does not require cause be given. *Cf.* 3 L.P.R.A. § 1336(4) (Supp.1985) (removal of career employees for good cause after preferment of charges in writing).

Nevertheless, plaintiffs may have a property interest in their government employment "created ... not only by explicit contractual provisions but also by an implied contract or officially sanctioned rules of the work place." *Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–

700, 33 L.Ed.2d 570 (1972). If this interest is to be found at all, it must be based on implied contract because the officially sanctioned rules of the work place embodied in 3 L.P.R.A. section 1336(9) do not aid plaintiffs. This Circuit has recently addressed the question of the procedural due process rights of transitory employees in Puerto Rico's civil service. *Cheveras Pacheco v. Rivera González,* 809 F.2d 125 (1st Cir. 1987). In that case, plaintiff alleged that he "understood" that the transitory position he occupied for six years to be permanent in nature. The court found, however, that this understanding, without more, led only to "a mere subjective 'expectancy'" that his job would continue indefinitely. *Perry v. Sindermann,* 408 U.S. at 603, 92 S.Ct. at 2700. "Without more, he has no property interest in his employment." *Cheveras Pacheco,* 809 F.2d at 127.

Here, plaintiffs have occupied their transitory posts for varying lengths of time; some as little as eighteen months, some with as many as fourteen consecutively renewed appointments extending over ten years. There is authority from the Supreme Court of Puerto Rico that, in particular instances, length of service may couple with other factors and amount to a transitory employee gaining a property interest requiring procedural due process. *See, e.g., Lupiañez v. Secretary of Education,* 105 D.P.R. 696 (1977) (three years' service coupled with employer's representations gave rise to implied contract). While it may seem clear to some that these people were abused by being kept on a short leash of six-month appointments, there was no evidence before the Court that even rose to the level of the "understanding" that *Cheveras Pacheco* averred. Accordingly, injunctive relief as to the procedural due process claim is DENIED.

### III. *Attorneys' Fees*

■ As prevailing parties, plaintiffs are entitled to attorneys' fees and costs. 42 U.S.C. § 1988. A verified fee application shall be filed within thirty days. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984).

Judgment shall be entered accordingly. IT IS SO ORDERED.