# Congressional Testimony of an Assistant United States Attorney on Behalf of the National Association of Assistant United States Attorneys

The Department of Justice correctly takes the position that it may not prohibit an Assistant United States Attorney from testifying before Congress in his or her personal capacity on behalf of the National Association of Assistant United States Attorneys.

The Department's rules regulating such testimony are consistent with the First Amendment Those rules require that the AUSA make it clear that he or she is not speaking for the Department, avoid using or permitting the use of his or her official title or position in connection with the testimony (except as one of several biographical details), and comply with rules on the protection of confidential information

November 7, 1994

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

You have asked for our opinion on certain issues pertaining to testimony by an Assistant United States Attorney ("AUSA") on legislation in which the Department has an interest, where the AUSA is not authorized to speak on behalf of the Department but rather is appearing in a personal capacity on behalf of the National Association of Assistant United States Attorneys ("NAAUSA"). We conclude that the Department's position, that it may not prohibit an AUSA from testifying before Congress in his or her personal capacity, is correct. We also conclude that the rules that regulate such testimony are consistent with the First Amendment. Those rules require that the AUSA make it clear that he or she is not speaking for the Department, avoid using or permitting the use of his or her official title or position in connection with the testimony (except as one of several biographical details), and comply with rules on the protection of confidential information.

## I. *Protection Afforded by the First Amendment*

The Supreme Court's approach for reviewing government restrictions on the exercise of First Amendment rights by their employees involves a balancing of employee and governmental interests. Because balancing tests by their nature turn on the facts of specific situations, for purposes of this memorandum we will analyze hypothetical congressional testimony by an AUSA on behalf of NAAUSA that would oppose a crime bill supported by the Department and recommend a different allocation of funds within the Department's appropriations bill than that requested by the Department.

225

Although the government obviously cannot prevent private citizens from presenting views on pending legislation, "the government's role as employer . . . gives it a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large. . . . [T]he government as employer indeed has far broader powers than does the government as sovereign." *Waters v. Churchill*, 511 U.S. 661, 671 (1994) (O'Connor, J., plurality opinion). As Justice O'Connor has recently explained,

> the extra power the government has in this area comes from the nature of the government's mission as employer. Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her.

*Id.* at 674-75. The balancing test that the Supreme Court applies in reviewing regulation of speech by government employees is well established:

> There is no dispute . . . about when speech by a government employee is protected by the First Amendment: To be protected, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to "'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"

*Id.* at 668 (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)).[1]

Justice O'Connor has noted that while "a private person is perfectly free to uninhibitedly and robustly criticize a state governor's legislative program, [the Court has] never suggested that the Constitution bars the governor from firing a high-ranking deputy for doing the same thing." *Waters v. Churchill*, 511 U.S. at 672. In its starkest terms, the question presented by the hypothetical we are addressing is whether this principle applies to an AUSA testifying about the crime bill on be-

---

[1] In adopting this balancing test that accommodates both governmental interests and employee speech rights, the Court has "rejected Justice Holmes' approach to the free speech rights of public employees, that '[a policeman] may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.'" *Rankin v McPherson*, 483 U S. 378, 395 (1987) (Scalia, J , dissenting) (quoting *McAuliffe v. Mayor of New Bedford*, 155 Mass 216, 220, 29 N E. 517 (1892)).

half of NAAUSA. A review of relevant Supreme Court decisions strongly suggests that the Court would hold that it does not.

Before any balancing is undertaken, the court must be satisfied that the speech in question was on a matter of public concern. "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers*, 461 U.S. at 146. The Court held in *Connick* that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," review of the government employer's actions in a federal court is unwarranted in the absence of "the most unusual circumstances." *Id.* at 147.

This threshold "matter of public concern" requirement is easily met in the NAAUSA testimony hypothetical. Testimony before Congress about pending legislation is by its very nature a matter of public concern. The Department's appropriations legislation, which sets forth the relative priority of the Department's various missions, obviously is of public concern, and testimony by Department prosecutors about a crime bill would appear to be of particularly high public concern, given the weight that can be given the expert views of federal prosecutors. These considerations are significant when balancing the strength of the AUSA's interest in giving the testimony against the Department's interest in preventing its employees from testifying in ways that are inconsistent with, and potentially undercut, the Department's position on the legislation. Two Supreme Court decisions are particularly relevant to that balancing.

In *Pickering*, the seminal public employee speech case, the Court held that a board of education's dismissal of a teacher for writing a letter to the editor of the local newspaper criticizing the board's communication to taxpayers related to several bond issues and its allocation of resources between athletic and educational programs violated the teacher's First Amendment rights. The first part of the Court's analysis rejected the board's argument that a government employee's duty of loyalty requires that he avoid public comments critical of the employer. The Court found that the teacher's statements were "in no way directed towards any person with whom [the teacher] would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here." 391 U.S. at 569-70. Nor were the teacher's relationships with the board or the school superintendent "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." *Id.* at 570. This part of the Court's analysis in *Pickering* suggests that the Department could not make employee loyalty a significant part of an argument justifying the suppression of the hypothetical NAAUSA testimony.

227

Of even greater significance for the NAAUSA hypothetical is the part of the Court's analysis in *Pickering* that focused on the public interest in the difference of opinion between the teacher and the board concerning the school system's budget, including specifically the disagreement over the allocation of funds between athletics and academics. The Court opined that a school system's budget

> is a matter of legitimate public concern on which the judgment of the school administration, including the School Board, cannot, in a society that leaves such questions to popular vote, be taken as conclusive. On such a question free and open debate is vital to informed decision-making by the electorate. Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.

*Id.* at 571-72. The Court concluded that the principle that "the government as employer . . . has far broader powers than does the government as sovereign" (*Waters,* 511 U.S. at 671) was inapplicable to the facts of the case: "we conclude that the interest of the school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public." 391 U.S. at 573.

The Court's strong statement in *Pickering* on the important contribution teachers can make to public debate on a school system's budget is directly pertinent to our consideration of the hypothetical NAAUSA testimony. Just as teachers are "the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent," we expect that the Court would conclude that the line prosecutors represented by NAAUSA have such "informed and definite opinions" on matters addressed in the crime bill and on "how funds allotted to the operation of the [Department] should be spent" that they must be allowed "to contribute to public debate."

The view that the hypothetical NAAUSA testimony would be speech protected by the First Amendment is also supported by the Court's decision in *Perry v. Sindermann,* 408 U.S. 593 (1972). Citing *Pickering,* the Court held in *Perry* that a complaint stated a First Amendment violation by alleging that a state college terminated the employment of a professor (who was also president of a teachers' association) in retaliation for his legislative testimony and other public statements disagreeing with the policies of the college administration. *Id.* at 598. It appears to us that the hypothetical testimony by an AUSA as an officer of an association of AUSAs presenting views in conflict with those expressed by the Department is on

228

all fours with the facts of *Perry*, which involved testimony by a teacher as president of a teacher's association disagreeing with the employer's policies.

Not only would it be difficult to distinguish the NAAUSA testimony from the speech held protected by the First Amendment in *Pickering* and *Perry*, it is also unclear whether the Court would even consider the Department's interest in pending crime and appropriations bills to constitute an interest that would qualify as a "government as employer" interest under the Court's balancing test: that is, an "interest of the [Department], as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. Since the public service of the Department in this circumstance is influencing Congress's consideration of legislation, the Department's interest as employer would appear to extend only to employees that participate in that service. Thus, the Department may have the right to require employees of the Office of Legislative Affairs or witnesses the Department chooses as its representatives to adhere to Department positions (just as it has the right to require AUSAs to adhere to Department litigation positions when they appear in court on behalf of the Department), but it is questionable whether the Department has that right with respect to individuals who do not perform functions in connection with the Department's legislative activities.[2]

In sum, whether it is because the Court would invoke the *Pickering* rationale and find that the Department's interest "in limiting [AUSAs'] opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public," 391 U.S. at 573, or because the Court would simply find that the Department's interest is not of the kind recognized under the balancing test, we believe that it is almost certain that the Court would hold the hypothetical NAAUSA testimony to be protected speech. Although the question might be closer in circumstances involving testimony on matters on which the views of AUSAs might not be deemed to be of significant congressional interest, we do not view this hypothetical as presenting a close question.

## II. *Limited Restrictions on the Content of the Testimony*

Although the Department generally may not prohibit AUSAs from testifying before congressional committees in their personal capacities on legislation of interest

---

[2] Moreover, as a factual matter, so long as it is clear that AUSAs testifying on behalf of NAAUSA are not presenting the views of the Department, it does not appear that the Department's ability to discharge its function of presenting Department and Administration views would be significantly compromised. While it may be that the expression of inconsistent views could affect the legislative outcome, that would be the result of the "free and open debate [that] is vital to informed decision-making by the [Congress], " *Pickering,* 391 U S at 571-72, not the Department's inability to discharge its responsibilities.

to the Department, we do not believe that the First Amendment makes impermissible the Department's traditional position that its employees must protect confidential information and must make clear that they are not speaking in their official capacities.

The Department has a legitimate need to ensure that the Department speaks with one voice concerning official positions and a significant responsibility to protect confidential Department information. In furtherance of these Department interests, the Department provides standard instructions to current (and sometimes former) employees of United States Attorneys' offices who testify before Congress concerning Department matters, whether in their official or personal capacities. *See, e.g.*, Letter for Lawrence J. Leiser, Esq., from Anthony C. Moscato, Director, Executive Office for United States Attorneys (May 2, 1994). The instructions specify that the AUSAs are not authorized to appear in their official capacity as an AUSA and that they have no authority to speak for the Department or their United States Attorney's Office.[3] They include a request that the employee make it clear, both at the beginning of the testimony and when questions of opinion arise, that the employee's opinions are personal and do not constitute an official position of the Department.

The standard instructions encourage AUSAs to answer fully and candidly all questions concerning matters within their personal knowledge. They stress in addition, however, that the appearance before the congressional committee does not relieve the employees of any obligations of secrecy that arise from their official duties as AUSAs. They give examples of the types of information that should not be revealed and direct that requests for Department records be referred to the Office of Legislative Affairs. The instructions conclude with the admonition that:

> You should be aware at all times of your obligations to be truthful and fair in responding to questions posed to you during the [testimony]. You should also carefully consider the scope of your answers in light of all requirements of law, rule, policy, and ethical standards, whether specifically discussed in this letter or not.

*Id.* at 2. To the limited extent that such efforts curtail speech by Department employees, the effect is to protect confidential Department information that employees are not free to disclose. Such efforts to ensure that the Department speaks with one voice and to protect confidential Department information fall squarely within the enhanced regulatory power the Department has as employer and are consistent with the First Amendment.

---

[3] *See United States Attorneys' Manual*, Ch 8, § 1-8.040 ("The Attorney General reserves the right to determine whether the Department will be represented at any Congressional hearing and, if so, who will appear on behalf of the Department ").

An AUSA who testifies in his or her personal capacity is also subject to government-wide ethics regulations which prohibit the AUSA from using or permitting the use of his or her official title or position in connection with the testimony except as one of several biographical details. Office of Government Ethics regulations provide that

> an employee shall not use or permit the use of his Government position or title or any authority associated with his public office in a manner that could reasonably be construed to imply that his agency or the Government sanctions or endorses his personal activities or those of another. When . . . speaking . . . in a personal capacity, he may refer to his official title or position only as permitted by § 2635.807(b).

5 C.F.R. § 2635.702(b) (1994). The only permissible reference to official title or position is that "[a]n employee may include or permit the inclusion of his title or position as one of several biographical details when such information is given to identify him in connection with his . . . speaking . . . , provided that his title or position is given no more prominence than other significant biographical details." 5 C.F.R. § 2635.807(b)(1) (1994).

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*

231